STEVEN RAY THOMAS

*v.*

BOBBY J. LEVERETTE, *Warden,*

WEST VIRGINIA PENITENTIARY

(No. 14771)

Decided December 19, 1980.

*J. David Cecil* for petitioner.

*Chauncey H. Browning,* Attorney General, *Lawrence R. Frail,* Assistant Attorney General, for appellee.

MCGRAW, JUSTICE:

Steven Ray Thomas appeals from an order of the Circuit Court of Kanawha County which denied his petition for a writ of habeas corpus, whereby he sought to be released from the custody of the appellee, Bobby J. Leverette, Warden of the West Virginia State Penitentiary. The appellant contends that at the time of his arrest and conviction on a charge of armed robbery he was entitled to a hearing to determine whether he was subject to the juvenile jurisdiction of the circuit court and that the failure to afford him such a hearing rendered his conviction void. We agree and reverse the ruling of the circuit court.

The facts of the case are undisputed. In January 1979, the appellant was indicted along with three others on two

counts of armed robbery alleged to have been committed in December of 1975. It has been stipulated that the appellant was sixteen years old at the time of his arrest upon these charges. On July 7, 1976, the appellant entered a plea of guilty to one count of armed robbery in the Circuit Court of Kanawha County, having been informed that upon entering such a plea, he was ineligible to be considered for probation. On July 30, 1976, the appellant was sentenced to confinement in the West Virginia State Penitentiary for a term of fifteen years. Subsequent to his sentencing, the appellant was sent to Huttonsville Correctional Center for diagnostic evaluation and was then transferred to the State Penitentiary. On September 9, 1976, upon motion of the State, an order was entered by the Circuit Court of Kanawha County to nolle prosequi the remaining armed robbery charge against the appellant.

On August 19, 1978, the appellant filed a petition for a writ of habeas corpus with this Court, alleging that the failure of the circuit court to afford him a hearing before it assumed criminal jurisdiction over his case resulted in a void conviction of the crime of armed robbery. This Court issued the writ prayed for, directing the appellant to appear before the Circuit Court of Kanawha County for further proceedings. A hearing was held on September 27, 1978, at which time the appellant presented his arguments. The circuit court found that, in view of certain prior decisions of this Court, the appellant was properly subjected to the criminal jurisdiction of the circuit court and was not entitled to a transfer hearing. It is from this order denying relief and dismissing the petition that the appellant takes this appeal.

The appellant's first contention is that he was entitled to be tried as a juvenile under the statute in effect at the time of his arrest and conviction because he was only sixteen years old at the time the offense was committed. Prior to the 1977 amendments, our juvenile law provided in material part" [e]xcept as to a violation of law which if committed by an adult would be a capital offense, the [circuit] court shall hear and determine criminal charges in the manner provided in [article 5 of the juvenile law] . . .

against a person who is under eighteen years of age at the time of the alleged offense." W. Va. Code § 49-5-3 [1975]. This provision authorized the circuit courts to exercise juvenile jurisdiction over youthful offenders and to take evidence respecting the alleged commission of a criminal act by a juvenile only for the purpose of determining whether the juvenile was a delinquent. Such proceedings related only to delinquency charges and were in no sense criminal trials for which criminal penalties could be imposed. *Brooks v. Boles,* 151 W. Va. 576, 153 S.E.2d 526, 527 (1967); *State ex rel. Hinkle v. Skeen,* 138 W. Va. 116, 75 S.E.2d 223 (1953). The statute expressly denied to the circuit courts the authority to try juveniles on delinquency charges where the criminal act charged would have constituted a "capital offense" if committed by an adult. The authority to try such offenses remained within the criminal jurisdiction of the circuit courts. *State ex rel. Hinkle v. Skeen, supra.* The State, while admitting that the appellant was under eighteen years of age at the time the offense for which he was convicted was committed, maintains that the appellant was charged with committing a "capital offense" and was therefore not subject to the juvenile jurisdiction of the circuit court under W. Va. Code § 49-5-3 [1975]. Thus, our resolution of this issue must turn on whether armed robbery constitutes a "capital offense", within the meaning of that statute, so as to deprive the circuit court of juvenile jurisdiction over the appellant's case.

A "capital crime" is one which may be, but not necessarily must be, punished by death. *Black's Law Dictionary,* p. 184 (5th ed. 1979). *See also* 6 *Words and Phrases,* "Capital Crime", "Capital Offense" (1966). Thus, a capital offense is one for which death is the maximum possible penalty, even though lesser alternative penalties are prescribed and may actually be imposed in a particular case. Some jurisdictions have held that the term "capital offense" also denotes a category of particularly serious or heinous offenses which were classified as "capital" by the legislature because of their gravity. *See U. S. v. Watson,* 496 F.2d 1125 (4th Cir. 1975); *Ex parte Bynum,* 294 Ala. 78, 312 So.2d 52 (1975); *People v. Anderson,* 6 Cal.3d 628, 100 Cal.

Rptr. 152, 493 P.2d 880 (1972); *People ex rel. Dunbar v. District Court*, 179 Colo. 304, 500 P.2d 358 (1972); *State v. Holmes*, 263 La. 685, 269 So.2d 207 (1975), *Hudson v. McAdory*, 268 So.2d 916, 923 (Miss. 1972); *Jones v. Sheriff*, 89 Nev. 175, 509 P.2d 824 (1973); *State v. James*, 30 Utah 2d 32, 512 P.2d 1031 (1973); *State v. Haga*, 81 Wash.2d 704, 504 P.2d 787 (1972). In these cases it was held that the judicial invalidation of the death penalty pursuant to the United States Supreme Court's decision in *Furman v. Georgia*, 408 U.S.238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), did not destroy the "capital" character of offenses previously punishable by death for purposes of statutory distinctions between capital and non-capital offenses with respect to bail, severance of trial, removal, number of jurors, number of preemptory challenges, number of appointed counsel, retention of jurisdiction, and other procedural matters.

West Virginia appears to have adopted this "classification" theory, at least with respect to the jurisdiction of the circuit court over juvenile proceedings. Our legislature abolished the death sentence as punishment for crimes in 1965. 1965 W. Va. Acts, ch. 40. In *State ex rel. Campbell v. Wood*, 151 W. Va. 807, 155 S.E.2d 893 (1967), the Court read § 49-5-3 in pari materia with W. Va. Code § 49-1-4(2), which defined "delinquent child" as ". . . a person under the age of eighteen years who . . . [c]ommits an act which if committed by an adult would be a crime *not* punishable by death or life imprisonment . . ." (emphasis of the Court), and concluded that for purposes of determining juvenile jurisdiction, the legislature intended to embrace within the class of "capital offenses" those crimes carrying a statutory penalty of life imprisonment as well as those punishable by death. Thus, the Court held that even though the death penalty had been statutorily abolished in West Virginia at the time of the offense, the crime of murder, which thereafter carried a mandatory penalty of life imprisonment, retained its "capital" character for the purpose of excluding from the juvenile jurisdiction of the circuit court a juvenile charged with murder.

In *Lycans v. Bordenkircher*, 159 W. Va. 137, 222 S.E.2d 14 (1975), the Court extended the reasoning of *Campbell* to

exclude from juvenile jurisdiction persons under the age of eighteen who were charged with the offense of armed robbery. The statutory penalty for armed robbery was and is confinement in the penitentiary for "not less than ten years". W. Va. Code § 61-2-12. No maximum penalty is prescribed by statute, but it has been held that a sentence of life imprisonment may be legally imposed upon a person convicted of armed robbery. *State ex rel. Faircloth v. Catlett,* 165 W. Va. 179, 267 S.E.2d 736 (1980); *State ex rel. Vascovich v. Skeen,* 138 W. Va. 417, 76 S.E.2d 283 (1953); *State v. Newman,* 108 W. Va. 642, 152 S.E.2d 195 (1930); *Franklin and Ponto v. Brown,* 73 W. Va. 727, 81 S.E. 405 (1914). The *Lycans* court concluded that since one convicted of armed robbery could possibly be sentenced to life imprisonment, that crime was within the class of "capital offenses" for purposes of the statutory exception to juvenile court jurisdiction.

We think, however, that the Court in *Lycans* failed to see an important distinction between that case and *Campbell, supra.* In *Campbell,* the Court was dealing with a criminal statute which specifically provides for the imposition of a sentence of life imprisonment upon conviction. W. Va. Code § 61-2-2. Thus, if we accept the classification theory first adopted in *Campbell,* it is clear that the legislature intended the crime of murder of the first degree to be included within the category of "capital offenses" for the purpose of excluding juveniles from the juvenile jurisdiction of the circuit court. Other crimes which require determinate life sentences and are thus included in the class of "capital offenses" include treason, W. Va. Code § 61-1-2; kidnapping, W. Va. Code § 61-2-14a; and certain offenses by prisoners, W. Va. Code § 62-8-2. In each case the legislature specifically indicated by the imposition of the penalty of life imprisonment its intention that these crimes be included in the class of "capital offenses" which are not subject to juvenile court jurisdiction.

The crime with which the appellants here and in *Lycans* were charged, however, does not carry a statutory penalty of life imprisonment. Armed robbery, some acts of kidnapping, and embezzlement are all crimes which are

punishable by imprisonment for not less than a minimum number of years but which carry no maximum penalty. W. Va. Code §§ 61-2-12; 61-2-14a; 61-3-20. Can these crimes be said to be within the category of capital offenses for purposes of W. Va. Code § 49-5-3? We think not. If the legislature had intended armed robbery to be a capital crime it would have indicated its intent by specifically providing for a penalty of life imprisonment as it did with treason, first degree murder and kidnapping. By leaving the maximum penalty for armed robbery within the discretion of the sentencing court, the legislature indicated that it did not consider armed robbery and other offenses carrying similar penalties to be in the same class of offenses. The fact that the legislature granted trial courts the discretion to impose life sentences for armed robbery indicates a recognition on the part of the legislature of the seriousness of that crime. It also evinces, however, a recognition that such offenses are not of the same grave character as those for which such discretion is not granted.[1]

---

[1] We note that other jurisdictions have faced similar issues and reached similar results. In *Jaramillo v. District Court*, 173 Colo. 459, 480 P.2d 841 (1971), the court was asked to determine whether a juvenile charged with aggravated robbery, which carried a penalty of imprisonment for "not less than four years, or for life", was excluded from the juvenile court's jurisdiction by virtue of a statute which conferred criminal jurisdiction over persons eighteen years of age or under who committed "crimes of violence punishable by death or life imprisonment". The court noted that the phrase "punishable by death or life imprisonment" could be interpreted three ways.

(1) It may mean only those offenses having as alternative punishments life imprisonment or death . . .

(2) Those crimes which are punishable only by life imprisonment and those offenses punishable only by death . . .

(3) Those crimes which have a minimum sentence of less than life imprisonment and a maximum of either life imprisonment or death. 481 P.2d at 842 - 843.

The Colorado Court concluded that in view of the intent of the legislature to grant broad jurisdiction to the juvenile court, it was not intended that the crimes falling under the third category were to be excluded from the juvenile court jurisdiction. The *Jaramillo* rule has been adopted by several other jurisdictions. *See Peterson v. State*, 586 P.2d 144 (Wyo. 1978); *Garrett v. State*, 481 S.W.2d 225 (Mo. 1972). *Contra, Ringel v. State*, 352 So.2d 88 (Fla.App. 1977). At least one other

This distinction between capital and non-capital offenses seems particularly appropriate in view of the fact that here it relates to the exercise of juvenile jurisdiction over youthful offenders. The enactment of the juvenile proceedings law reflected the intention of the legislature to separate and treat differently the wrongful acts of children from those of adults. *State ex rel. Slatton v. Boles*, 147 W. Va. 674, 130 S.E.2d 192 (1963). Statutory amendments to the juvenile law and the decisions of this Court over the past few years have indicated a concern that children not be treated as criminals except in extreme cases where rehabilitation is not possible. *See, e.g.*, 1977 W. Va. Acts, ch. 65; 1978 W. Va. Acts, ch. 14; *State ex rel. Harris v. Calendine*, 160 W. Va. 172, 233 S.E.2d 318 (1977). It seems obvious to us that even under the former statute, juvenile jurisdiction over children who had committed criminal acts was to be preferred in every instance except where it was specifically excluded. We conclude therefore that armed robbery was not intended to be included in that class of crimes designated "capital offenses" for the purposes of W. Va. Code § 49-5-3 [1975], excluding from the juvenile jurisdiction of the circuit court juveniles charged with the commission of acts which would be "capital offenses" if committed by an adult. Insofar as it is in conflict with this holding, *Lycans v. Bordenkircher*, 159 W. Va. 137, 222 S.E.2d 14 (1975) is hereby overruled.

The appellant also assigns as error the failure of the circuit court to provide him with a hearing to determine whether probable cause existed to believe that he had committed a capital offense. The appellant contends that even if armed robbery were correctly classified as a capital offense, the circuit court could not exercise criminal

---

jurisdiction has held that where a juvenile was charged with commission of a crime carrying a mandatory penalty of life imprisonment and was tried as an adult pursuant to statutes almost identical to §§ 49-5-3 and 49-1-4(2), the phrase "punishable by death or life imprisonment" could only be read to mean only those crimes which were punishable by alternative sentences of death or life imprisonment. *Cummings v. State*, 252 Ind. 701, 251 N.E.2d 663 (1969). There it was determined that such an interpretation did no violence to the traditional meaning of the term "capital offense".

jurisdiction over his case without first having determined that he was excluded from the juvenile court's jurisdiction.

Although our present juvenile law requires such a hearing as a prerequisite to the transfer of a juvenile proceeding to the criminal jurisdiction of the circuit court,[2] no such hearing was statutorily required under the law in effect at the time of the appellant's arrest and conviction. That statute did require, however, that

> [i]f during the pendency of a criminal proceeding against a person in any court, other than a circuit court, pursuant to this article, it shall be ascertained, or it shall appear, that the person was under the age of eighteen years at the time of the alleged offense, such court, judge, justice of the peace or magistrate shall immediately transfer the case with all papers, documents and testimony convicted therewith to the circuit court. The circuit court shall proceed to hear and dispose of the case in the same manner as if it had been instituted in that court in the first instance ...
> W. Va. Code § 49-5-3 [1975]

We think that this provision, which required the immediate transfer of any criminal proceeding pending against a juvenile to the circuit court, the only court which had original jurisdiction over juvenile proceedings,[3] manifested an intent on the part of the legislature that juveniles were presumed to be subject to the juvenile jurisdiction of the circuit court unless it was shown that they came within an exception to that jurisdiction.[4] Juveniles were entitled to be proceeded against in the juvenile court unless it was shown that they were statutorily excluded from the jurisdiction of the court.

Where the State seeks to deprive a juvenile of the protections of the juvenile law to which he or she is presumptively entitled, due process requires that the

---

[2] W. Va. Code § 49-5-10 (1978).

[3] W. Va. Code § 49-5-1 [1975].

[4] The exceptions were (1) where a juvenile allegedly committed a capital offense and (2) where a juvenile violated state traffic laws or municipal traffic ordinances. W. Va. Code § 49-5-3 [1975].

juvenile be afforded a hearing to determine whether he or she is statutorily excluded from the juvenile jurisdiction of the circuit court. As much is required by the United States Supreme Court decision in *Kent v. U. S.*, 383 U. S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966) and by our decision in *State v. McArdle*, 156 W. Va. 409, 194 S.E.2d 174 (1973). Although those cases dealt with the discretionary transfer of juveniles to the criminal jurisdiction of the circuit court, we do not think the constitutional requirement that the juvenile court hold an adequate hearing and make findings of fact sufficient to justify transfer is in any way diminished by the fact that the submission of the juvenile to the criminal jurisdiction is statutorily mandated rather than a matter of the juvenile court's discretion. It is presumed that jurisdiction over juveniles charged with the commission of criminal acts is vested in the juvenile courts. The removal of such proceedings to the criminal jurisdiction can be accomplished only by means of a hearing to determine whether (1) the court in its discretion is justified in transferring the case to the criminal court for further proceedings therein or (2) the juvenile court lacks jurisdiction by virtue of statutory exceptions which place jurisdiction in the criminal court. To support the removal of a juvenile to the criminal jurisdiction of the circuit court for the commission of a specific offense, it must be shown to the Court that probable cause existed to believe the juvenile had committed that offense. We conclude, therefore, that the circuit court erred in determining that the appellant was not entitled to a hearing to determine whether he was statutorily excluded from the juvenile jurisdiction of the circuit court.

In view of our holding, we find it unnecessary to reach the appellant's third contention that he could not be sentenced as an adult unless the court found no appropriate alternative disposition. We conclude that the circuit court erred in finding that armed robbery was a capital offense within the meaning of W. Va. Code § 49-5-3 [1975] and that the appellant was not entitled to a probable cause hearing to determine if he was subject to criminal prosecution as an adult. We reverse the ruling of the Circuit Court of

Kanawha County dismissing appellant's petition for a writ of habeas corpus and we remand the case to that court for further proceedings in accordance with the principles contained herein. I am authorized to say that Justice Caplan dissents for the reasons stated in *Lycans v. Bordenkircher, supra.*

*Reversed and remanded.*