For the reasons stated, the judgment of the Circuit Court of Ohio County is affirmed.

Affirmed.

310 S.E.2d 858

**STATE of West Virginia**

v.

**D.D.**

**No. 15790.**

Supreme Court of Appeals of West Virginia.

Dec. 15, 1983.

Janet Frye Steele, Asst. Atty. Gen., Charleston, Andrew N. Frye, Jr., Pros. Atty., Petersburg, for appellee.

Dennis V. DiBenedetto, Geary & Geary, Petersburg, for appellant.

HARSHBARGER, Justice.

This appeal by a child from an order transferring him to adult criminal jurisdiction presents a question about the construction of our juvenile transfer statute, W.Va.Code, 49–5–10 [1978]. Can a child who commits two acts that would be felony offenses if committed by an adult, be transferred for adult criminal proceedings pursuant to W.Va.Code, 49–5–10(d)(5) [1978], if

at the time the acts were committed, the child had never been adjudged delinquent?

## I.

During one night in May, 1982, D.D., who was then sixteen years of age, allegedly committed two crimes in Grant County that would be felonies if committed by an adult: breaking and entering (W.Va.Code, 61–3–12), and receiving or transferring a stolen vehicle (W.Va.Code, 17A–8–5). A delinquency petition was filed charging that he had received or transferred the stolen vehicle, the second offense committed that night. He pled guilty and was adjudged delinquent.

Before his disposition, however, he was indicted in Grant County for the breaking and entering, the first offense, and his case was transferred to the trial court's juvenile jurisdiction. The prosecution then moved to transfer him back to the adult side pursuant to W.Va.Code, 49–5–10(d)(5), stating that there was probable cause to believe he had committed a breaking and entering, and that he had been previously found guilty for receiving stolen property, also a felony if committed by an adult. The circuit court following a hearing granted the transfer motion, over objection, and D.D. appealed.

## II.

W.Va.Code, 49–5–10(d) [1978], authorizes the transfer of children to adult criminal proceedings:

(d) The court may, upon consideration of the child's mental and physical condition, maturity, emotional attitude, home or family environment, school experience and similar personal factors, transfer a juvenile proceeding to criminal jurisdiction if there is a probable cause to believe that:

(1) The child has committed the crime of treason under section one [§ 61–1–1], article one, chapter sixty-one of this Code; the crime of murder under sections one, two and three [§§ 61–2–1, 61– 2–2 and 61–2–3], article two, chapter sixty-one of this Code; the crime of robbery involving the use or presenting of firearms or other deadly weapons under section twelve [§ 61–2–12], article two, chapter sixty-one of this Code; the crime of kidnapping under section fourteen-a [§ 61–2–14a], article two, chapter sixty-one of this Code; the crime of first degree arson under section one [§ 61–3–1], article three, chapter sixty-one of this Code; or charging sexual assault in the first degree under section three [§ 61– 8B–3], article eight-B, chapter sixty-one of this Code, and in such case, the existence of such probable cause shall be sufficient grounds for transfer without further inquiry; or

(2) A child has committed an offense of violence to the person which would be felony if the child were an adult: Provided, that the child has been previously adjudged delinquent for the commission of an offense which would be a violent felony if the child were an adult; or

(3) A child has committed an offense which would be a felony if the child were an adult: Provided, that the child has been twice previously adjudged delinquent for the commission of an offense which would be a felony if the child were an adult; or

(4) A child, sixteen years of age or over, has committed an offense of violence to the person which would be a felony if committed by an adult; or

(5) *A child, sixteen years of age or over, has committed an offense which would be a felony if committed by an adult: Provided, that such child has been previously adjudged delinquent for an offense which would be a felony if the child were an adult.* (Emphasis supplied.)

D.D. argues that subsection (d)(5) of the transfer statute is ambiguous. He urges us to draw an analogy to our cases interpreting the recidivist statute, W.Va.Code, 61–11–18.[1] While juvenile cases are often

---

1. W.Va.Code, 61–11–18 provides:

"When any person is convicted of an offense and is subject to confinement in the penitentia-

referred to as being *sui generis*, analogies to the criminal law can often be enlightening. Here, an analogy is helpful.

In *State v. McMannis*, 161 W.Va. 437, 242 S.E.2d 571 (1978), the prosecutor alleged that the defendant was the same person who had been twice before convicted of crimes punishable by confinement in the penitentiary. The prosecutor did not allege or prove when the prior felony offenses were committed or when the defendant was convicted of them. Because the recidivist statute was ambiguous, we construed it, in light of its purpose, to require the government to prove beyond a reasonable doubt that each recidivist offense be *committed* subsequent to a previous conviction and sentence. The principal rationale was:

> The teaching of our case law is that the primary purpose of the statute is to deter felony offenders, meaning persons who have been convicted and sentenced previously on a penitentiary offense, from committing subsequent felony offenses. The statute is directed at persons who persist in criminality after having been convicted and sentenced once or twice, as the case may be, on a penitentiary offense. If the deterrent purpose of the statute is to be furthered, it is essential that the alleged conviction or convictions, except for the first offense and conviction, were for offenses committed after each preceding conviction and sentence.

*Id.,* 161 W.Va. at 441, 242 S.E.2d at 574–575.

We have much the same problem here: ambiguous statutory language that must be construed to effectuate legislative intent. We begin by examining the purpose and history of legislative amendments to our child welfare laws (Chapter 49), just as we looked to the purpose of the recidivist statute.

### III.

When the juvenile transfer provisions of W.Va.Code, 49–5–10 were amended in 1978, W.Va.Code, 49–1–1 was also amended. It currently provides in relevant part:

> (a) The purpose of this chapter is to provide a comprehensive system of child welfare throughout the State which will assure to each child such care and guidance, preferably in his own home, as will serve the spiritual, emotional, mental and physical welfare of the child; preserve and strengthen the child's family ties whenever possible with recognition to the fundamental rights of parenthood and with recognition of the *state's responsibility to assist the family in providing the necessary education and training and to reduce the rate of juvenile delinquency and to provide a system for the rehabilitation or detention of juvenile delinquents and protect the welfare of the general public.* In pursuit of these goals it is the intention of the legislature to provide for removing the child from the custody of parents only when the child's welfare or the safety and protection of the public cannot be adequately safeguarded without removal; *and, when the child has to be removed from his own family, to secure for him custody, care and discipline consistent with the child's best interests and other goals herein set out.* (Emphasis supplied.)

The legislature passed significant amendments to the juvenile transfer provisions of our child welfare laws in 1977 and 1978, amendments that reflect a continuing, perhaps eternal, search for a proper balance between the rehabilitative goals of the juvenile justice system and the need to protect the general public.

---

ry therefor, and it is determined, as provided in section nineteen [§ 61–11–19] of this article, that such person had been before convicted in the United States of a crime punishable by imprisonment in a penitentiary, the court shall, if the sentence to be imposed is for a definite term of years, add five years to the time for which the person is or would be otherwise sentenced. Whenever in such case the court imposes an indeterminate sentence, five years shall be added to the maximum term of imprisonment otherwise provided for under such sentence.

"When it is determined, as provided in section nineteen hereof, that such person shall have been twice before convicted in the United States of a crime punishable by confinement in a penitentiary, the person shall be sentenced to be confined in the penitentiary for life."

The 1978 amendment reflects a purpose to transfer certain juvenile offenders to what is considered the harsher, more punitive world of adult criminal courts. This is consistent with the current national trend. *See* MAJOR ISSUES IN JUVENILE JUSTICE INFORMATION AND TRAINING: *Youth in Adult Courts: Between Two Worlds*, United States Department of Justice, Office of Juvenile Justice and Delinquency Prevention; National Institute for Juvenile Justice and Delinquency Prevention (1982). It permits transfers that would not have been possible under the 1977 statute. Significantly, the 1978 amendment in certain circumstances eliminates the requirement of the 1977 statute that the transfer offense be "committed, on or after his [the child's] sixteenth birthday," W.Va.Code, 49–5–10(a).[2] There is no age criterion for transfer under subsection d(1), (2) or (3). (*See supra*, pages 859 and 860.) The great majority of states have a minimum age limit for criminal jurisdiction. *Id.*, at 87. In 1979, the American Bar Association approved standards limiting criminal jurisdiction to offenses committed by a person who was at least fifteen years of age. American Bar Association, *Standards Relating to Transfer Between Courts*, Part 1: Jurisdiction (1979).

Although the state is no longer expressly required to prove by clear and convincing evidence that there are "no reasonable prospects for rehabilitating the child through resources available to the court," *State ex rel. Cook v. Helms*, 170 W.Va. 200, 292 S.E.2d 610, 612 (1981), subsections 2 through 5, clearly require the court to consider the child's mental and physical condition, maturity, home or family environment, school experience, and other similar factors for a valid waiver of juvenile jurisdiction. *See State v. R.H.*, 166 W.Va. 280, 273 S.E.2d 578 (1980). Ultimately, the transfer decision is for the court.

A holistic appraisal of the child and his environment is consistent with the broad rehabilitative purposes of juvenile law, and reflects a legislative recognition that unlawful behavior is not simply a product of the evils of human nature; that criminal, anti-social behavior may have its genesis in a broken or violent home, in educational difficulties, or in poverty. The causes of a child's behavior, therefore, must be analyzed if the rehabilitative, child-saving purpose of our child welfare law is to be fulfilled.

Another overall effect of the 1978 amendment is to make more specific those instances where judicial transfer is permissible. Three factors are given particular emphasis in reconciling the competing societal objectives: the age of the child at the time the offense was committed; the seriousness and especially the violent nature of the crime committed; and finally, the child's prior juvenile record and his amenability to juvenile court processes. The last factor is given particular emphasis in Subsection (d)(3) by the requirement of two prior delinquency adjudications for what would have been felony offenses if committed by an adult (apparently applying to children less than sixteen years old).

---

**2.** W.Va.Code, 49–5–10(a) [1977], in pertinent part reads:

"(a) Upon motion of the prosecuting attorney, the recommendation of the referee or upon its own motion, the court may at the time specified in section nine of this article transfer to a criminal proceeding the case of *a child [any person under eighteen years of age] who is alleged to have committed, on or after his sixteenth birthday, an offense which, if committed by an adult, would be a felony if there is clear and convincing proof that: (1) The offense allegedly committed by the child is one of violence or evidences conduct which constitutes a substantial danger to the public; and (2) there are no reasonable prospects for rehabilitating the child through resources available to the court under this article.*

With reference to such rehabilitation prospects the court shall consider the child's mental and physical condition, maturity, emotional attitude, home or family environment, school experience and the like. The burden of proof of such determination shall rest on the petitioner."

From 1975 to 1977, all criminal-type offenses were within juvenile jurisdiction, except for traffic offenses and "a violation of law which if committed by an adult would be a capital offense ...." W.Va.Code, 49–5–3 [1975]. This Court decided that for the purpose of defining juvenile jurisdiction, armed robbery is not a capital offense. *Thomas v. Leverette*, 166 W.Va. 185, 273 S.E.2d 364 (1980), *overruling, Lycans v. Bordenkircher*, 159 W.Va. 137, 222 S.E.2d 14 (1975).

Since the 1978 amendment to the transfer statute, the legislature has underscored its continuing commitment to the rehabilitation model of our juvenile law by enacting the West Virginia Juvenile Offender Rehabilitation Act in 1979. W.Va.Code, 49–5B–1, *et seq.* Section 2 thereof provides:

It is the purpose and intent of the legislature to provide for the creation of all reasonable means and methods that can be established by a humane and enlightened state, solicitous of the welfare of its children, for the prevention of delinquency and for the care and rehabilitation of delinquent children. It is further the intent of the legislature that this State, through the department of welfare, establish, maintain, and continuously refine and develop, a balanced and comprehensive state program for children who are potentially delinquent or are delinquent, other than those children committed to the care and custody of the department of corrections.

## IV.

Here, the State's evidence establishes probable cause to believe that D.D. at age sixteen committed an offense which would be a felony if committed by an adult (breaking and entering). Subsection (d)(5) contains a proviso that allows transfer upon such a showing only where the child has been "previously adjudged delinquent" for an offense that would be a felony if committed by an adult. The problem is that the adverb "previously" does not have a clear referent. This creates a temporal ambiguity. The question is, "previous" to what? Did the legislature mean to permit waiver of juvenile jurisdiction, so long as the child had been adjudged delinquent prior to the filing of the motion for transfer? That is the reading given the statute by the circuit court. Or did the legislature have in mind transfer of the repeat offender; that is, the child who, subsequent to an adjudication of delinquency, commits another offense that would be a felony if committed by an adult?

■ The legislature never intended subsection (d)(5) to permit waiver of juvenile jurisdiction in the circumstances of this case. Here, the child had never been adjudged delinquent at the time he allegedly committed the offense relied on for transfer. The juvenile court with all its resources has never had a chance to help him.

We think the statute contemplates that there be probable cause to believe that the child *committed* the felony-type offense relied on for transfer, after having been adjudged delinquent for a felony-type offense. The statute is directed at individuals who, subsequent to a juvenile adjudication, manifest a lack of amenability to juvenile court rehabilitative processes by committing another offense.

Our legislature, as is true in most states, has wisely left the transfer decision with the courts. Surely the legislature did not intend for the authority to transfer to be determined simply by the order in which the prosecutor brings the charges, considering that "[t]he decision to try a juvenile as an adult has enormous and lifelong consequences for the child and for society." *State v. M.M.*, 163 W.Va. 235, 256 S.E.2d 549, 556–557 (1979).

■ Our decision is consistent with traditional canons of statutory construction. If transfer is authorized by the statute, D.D. is subject to being punished as a criminal. It thus is only logical to construe the transfer statute in the same manner as a penal statute: against the government and in favor of the individual. *See, e.g., State v. Vandall,* 170 W.Va. 374, 294 S.E.2d 177 (1982). Furthermore, when the statute is interpreted according to the well-established principle that transfer should be the exception and not the rule, *see, e.g., State ex rel. Smith v. Scott,* 160 W.Va. 730, 238 S.E.2d 223 (1977), ambiguous statutory language should be construed against transfer.

We hold, therefore, that D.D. is not subject to transfer and must remain in the juvenile jurisdiction of the circuit court.

The order of the Circuit Court of Grant County is vacated, and the case is remand-

ed for such further juvenile proceedings as may now be appropriate.

Reversed and remanded.