## A98A1055. ROCHA v. THE STATE.
### (506 SE2d 192)

BLACKBURN, Judge.

Larry Rocha appeals his convictions of aggravated assault, possession of a firearm during the commission of a felony, and giving a false name to a law enforcement officer in the Superior Court of Gwinnett County, contending: (1) that the superior court erred in failing to quash his indictment; (2) that he was wrongfully indicted in superior court on offenses not properly transferred by the juvenile court; (3) that the superior court erred by not allowing him to present evidence that some of the crimes he was charged with were committed by someone else; (4) that the superior court improperly combined jury charges relating to identity and party to a crime; (5) that the

---

[5] *Padgett v. Waffle House*, 269 Ga. 105, 106 (1) (498 SE2d 499) (1998).

superior court erroneously denied his motion to sever the charges against him; and (6) that the superior court erroneously denied his plea of double jeopardy. For the reasons set forth below, we affirm.

On March 11, 1995, Jacob Cobb, Brett Halama, Chris Sherrill, and Brad Boyette were out riding in Halama's Jeep. Cobb, seeing a car with some girls whom he knew, raised his hand to hail them and motioned them to pull over to a nearby convenience store. Cobb testified that Rocha, who is Hispanic, and his companions followed them to the convenience store, jumped out of Rocha's maroon low-rider truck, and accused Cobb and his friends of making an obscene gesture at him. Cobb further testified that Rocha pointed a gun at Sherrill's head while making such accusations. Rocha then pointed the gun at Cobb while threatening him with bodily harm. Two eyewitnesses at the scene, including Cobb, picked Rocha's picture from a photo lineup as the perpetrator. Stacy South, another eyewitness, told police that the tag number of the truck was 385EE. The tag number of Rocha's truck was actually 835EE.

On March 15, 1995, Adam Raudebaugh was a passenger in a gray 1987 Chevrolet Nova driven by Emily Stoddard. After he exchanged rude gestures with individuals riding in the back of a maroon truck, Raudebaugh testified that the driver, whom he remembered being Hispanic, pulled out a gun and fired approximately four shots at Stoddard's car. One bullet struck Raudebaugh in his chest. On the day of this incident, Christopher Watts was driving his vehicle, and, after being passed by Rocha's pickup, he observed an arm extend out of the window on the driver's side of the car and fire three or four shots into Stoddard's car. Watts testified, however, that he believed the shooter was a black male wearing a long-sleeved plaid shirt. Kathleen Bass was a passenger in Rocha's truck on March 15, 1995, and she identified Rocha as the driver on that day.

Based on this conduct, delinquency petitions were filed against Rocha in the juvenile court alleging five counts of aggravated assault. After a hearing, the juvenile court ordered that the cases against Rocha should be transferred to the superior court. On May 22, 1995, Rocha filed a notice of appeal with regard to this decision, and this Court issued an opinion affirming the transfer order on January 3, 1996. See *In the Interest of L. R.*, 219 Ga. App. 755, 756 (2) (466 SE2d 653) (1996). In the interim, on July 11, 1995, Rocha was indicted by the grand jury of Gwinnett County on five counts of aggravated assault, two counts of possession of a firearm during the commission of a felony, and one count of giving a false name to a law enforcement officer.

1. In his first enumeration of error, Rocha contends that the superior court erroneously failed to quash the indictment returned against him, arguing that the superior court had no jurisdiction over

Rocha's case at the time that he was indicted by the grand jury. Rocha argues that the appeal of the transfer order vested jurisdiction of his case solely in this Court until such appeal was decided. We disagree.

In general, a juvenile court may transfer a juvenile's case over which it has jurisdiction to superior court if, after a statutorily mandated hearing, the court determines, among other things, that there are reasonable grounds to believe that "(A) [t]he child committed the delinquent act alleged; (B) [t]he child is not committable to an institution for the mentally retarded or mentally ill; and (C) [t]he interests of the child and the community require that the child be placed under legal restraint and the transfer be made." OCGA § 15-11-39 (a) (3). As noted above, we have previously decided that Rocha's case was appropriately transferred to the superior court.

"In all cases of final judgments of a juvenile court judge, appeals shall be taken to the Court of Appeals or the Supreme Court in the same manner as appeals from the superior court. However, *no such judgment or order shall be superseded* except in the discretion of the judge; rather, the judgment or order of the court shall stand until reversed or modified by the reviewing court." (Emphasis supplied.) OCGA § 15-11-64.

An appropriately entered transfer order constitutes a final judgment of the juvenile court. *J. T. M. v. State of Ga.*, 142 Ga. App. 635, 636 (1) (236 SE2d 764) (1977). OCGA § 15-11-64 expressly states that any such judgment or order shall stand until reversed or modified by the appellate court. Accordingly, even though the transfer order was on appeal at the time Rocha was indicted, it remained in effect at that time, and the proceedings which occurred in the superior court, pursuant to the transfer order which had not been superseded, including Rocha's indictment, were valid. Although Rocha complains that it would be unfair to allow proceedings to continue in the superior court while the appellate court considered the transfer order, Rocha was not bound to sit idly by while his case proceeded below. He could have moved this Court for a stay if a trial were to be initiated in the court below and he truly wished to stop the engines of the superior court.

In this case, the superior court judge wisely exercised his discretion to continue Rocha's case after his indictment until this Court reached its opinion with regard to his transfer order. In doing so, the trial court ensured the speediest disposition possible for Rocha's case. Accordingly, we find no error.

2. In his second enumeration of error, Rocha contends that he was wrongfully charged with indictments which were not first considered and transferred by the juvenile court. Although the juvenile court transferred five counts of aggravated assault to the superior

court, Rocha was also indicted for two additional counts of possession of a firearm during commission of a felony and one count of giving a false name to a law enforcement officer.

Our Supreme Court has previously held: " '[T]he concurrent jurisdiction of the superior court over capital felonies committed by juveniles must necessarily extend to related lesser crimes which are part of the same criminal transaction. To rule otherwise would be to bisect criminal conduct artificially and require the state to follow two procedures with no substantive meaning other than to satisfy procedural requirements, with the end result that the case involving the lesser crime would be instituted in juvenile court and transferred to the superior court, OCGA § 15-11-39, and the juvenile would still be tried for the lesser crime along with the crime giving the superior court concurrent jurisdiction. There is no loss of substantive protection of the juvenile, and the public's rights should not be impeded by meaningless procedural steps which delay the judicial process and conceivably could lead to the frustration of justice under the rigorous requirements of the double jeopardy clause.' " *Reynolds v. State*, 266 Ga. 235, 236 (466 SE2d 218) (1996), quoting *Worthy v. State*, 253 Ga. 661, 662 (324 SE2d 431) (1985).

In the matter at hand, the juvenile court considered all the relevant evidence surrounding Rocha's criminal conduct on March 11 and March 15, 1995, prior to transferring five counts of aggravated assault to the superior court. At that point, the superior court had jurisdiction over the aggravated assault charges. For similar reasons cited in *Reynolds*, supra, we find that such jurisdiction over the aggravated assault charges should also extend to the related lesser crimes resulting from the same criminal transaction, namely the counts regarding possession of a firearm and giving a false name. To rule otherwise would be to advocate the same sort of "meaningless procedural steps" and "frustration of justice" which our Supreme Court has rejected. Accordingly, we find no error in Rocha's indictment in the superior court for two counts of possession of a firearm and one count of giving a false name to a police officer.

3. In his third enumeration of error, Rocha contends that the trial court erroneously denied him the right to present evidence that the March 15, 1995 shooting was perpetrated by Moses Ford. Specifically, Rocha contends that the following evidence should have been allowed to show that Ford was the actual shooter: (1) that Moses Ford was the leader of a gang known as "Clientele"; (2) that Ford employed methods of intimidation to control other gang members; (3) that Ford was known to carry a gun at all times; and (4) that Ford had "bargained" himself out of a similar aggravated assault charge by implicating Rocha in the March shooting.

Rocha attempted to introduce evidence that Ford was the leader

of the Clientele and used methods of intimidation for the purpose of showing that other members of the gang would be biased against Rocha due to their fear of implicating Ford as the actual shooter. Specifically, Rocha makes this claim with regard to the testimony of Kathleen Bass and Kenyatta Martin. Although a defendant is entitled to a thorough and sifting cross-examination, the trial court appropriately limited such cross-examination in this case. The court stated: "I think you can ask if [Ford] ever suggested to them, 'well, don't implicate me.' And if she's afraid of him, I think you can inquire into that. But going into all the acts, sexual acts and physical acts or acts of abuse or violence or that sort of thing, with the posture of the case as it is, I don't think it's relevant." As Rocha presented no evidence that Bass or Martin had actually been coerced by gang tactics, the trial court did not abuse its discretion in limiting his cross-examination. Nor did the court err in excluding testimony that Ford bargained himself out of a similar conviction, as Rocha presented no substantive evidence establishing this fact.

Under this enumeration, Rocha argues several additional errors. However, "OCGA § 5-6-40 requires that enumerations shall set out separately each error upon which relied. When an appellant argues more than one error within a single enumeration, this court in its discretion may elect to review none of the errors so enumerated in violation of OCGA § 5-6-40 or elect to review any one or more of the several assertions of error contained within the single enumeration and treat the remaining assertions of error therein as abandoned." (Citation and punctuation omitted.) *White v. State*, 221 Ga. App. 860, 861 (1) (473 SE2d 539) (1996). Moreover, with regard to a number of his arguments, Rocha raises new grounds for his objections for the first time on appeal. "Since the objection argued on appeal was not raised in the trial court, it presents nothing for this court to review." *Woods v. State*, 210 Ga. App. 172, 174 (3) (435 SE2d 464) (1993).

4. In his fourth enumeration of error, Rocha contends that the trial court improperly combined jury charges relating to identity and party to a crime. We disagree.

"The evidence introduced at trial established without dispute that an aggravated battery had in fact been committed, and in such case the co-conspirators are guilty as parties to the commission of the crime under OCGA § 16-2-20. Where there is any evidence, however slight, upon a particular point, it is not error for the court to charge the law in relation to that issue." *Day v. State*, 197 Ga. App. 875, 876 (2) (399 SE2d 741) (1990).

Moreover, despite the fact that Rocha was not charged with being a party to a crime, the trial court's charge on the law of party to a crime did not constitute reversible error. "The trial court charged the jury on the law of parties to a crime even though the State main-

tained that defendant alone was responsible. . . . Even if the charge here was error, it would be harmless in light of the strong evidence" against Rocha. *Lewis v. State*, 195 Ga. App. 59, 60 (2) (392 SE2d 563) (1990).

Finally, considering the jury instructions as a whole, we do not find them to be so confusing as to mislead the jury. Viewed in its entirety, therefore, the charge to the jury was adequate, and we find no reversible error. See generally *Hambrick v. State*, 256 Ga. 688, 690 (3) (353 SE2d 177) (1987).

5. In his fifth enumeration of error, Rocha contends that the trial court erroneously denied his motion to sever the charges against him. We disagree.

"The decision to grant a severance rests within the sound discretion of the trial judge, who may balance the interests of the state and the accused by considering such factors as whether the same evidence would be necessary and admissible in each count, and whether the joining of counts in one trial might confuse the jury. It is not an abuse of that discretion in the interest of justice and economy for the judge to refuse a motion for severance of the trial of multiple charges where the crimes alleged were part of a continuous transaction or series of similar transactions conducted over a relatively short time, and from the nature of the entire transaction, it would be difficult to present to a jury evidence of one of the crimes without also referring [to] or permitting evidence of the others." (Citations omitted.) *Gilbert v. State*, 163 Ga. App. 688, 690 (3) (295 SE2d 173) (1982).

Here, "[t]he facts in the two cases, as discussed above, are so similar that even if the two cases had been severed, each would have been admissible in the other case as evidence of a similar transaction. Accordingly, where the evidence of one crime would be admissible in the trial of the other crime, it cannot be said that the trial court abused its discretion in denying the motion for severance." (Citation and punctuation omitted.) *Redding v. State*, 219 Ga. App. 182, 184 (3) (464 SE2d 824) (1995).

6. In his sixth enumeration of error, Rocha argues that the trial court erroneously denied his plea of double jeopardy, contending that the juvenile court conducted an adjudicatory hearing in his case. We disagree.

"[Rocha] contends . . . that the procedure the juvenile court used in considering transfer of the case to superior court constituted an adjudication of delinquency which barred further prosecution for the offenses involved. Had there been such an adjudication, it would have had the impact [Rocha] contends the transfer hearing had. *In re T. E. D.*, 169 Ga. App. 401, 402 (2) (312 SE2d 864) (1984). The record, however, does not support [Rocha's] contentions regarding the conduct and effect of the transfer hearing." *Livingston v. State*, 266 Ga.

501, 506 (5) (467 SE2d 886) (1996).
*Judgment affirmed. McMurray, P. J., and Eldridge, J., concur.*

DECIDED AUGUST 20, 1998 —

*Rich & Smith, Randolph G. Rich*, for appellant.
*Daniel J. Porter, District Attorney, George F. Hutchinson III, Assistant District Attorney*, for appellee.