664 S.E.2d 677

**STATE of West Virginia, Plaintiff Below, Appellee**

v.

**James Lee BROOKS, III, Defendant Below, Appellant.**

**No. 33662.**

Supreme Court of Appeals of West Virginia.

Submitted April 15, 2007.

Decided May 23, 2008.

Marcia L. Ashdown, Monongalia County Prosecuting Attorney, Morgantown, WV, for the Appellee.

RaeLynn Regula, Bader C. Giggenbach, Morgantown, WV, for the Appellant.

ALBRIGHT, Justice.

James Lee Brooks, III, appeals his convictions for conspiracy to commit first-degree robbery, malicious assault, and conspiracy to commit malicious assault. Because he was transferred from juvenile to adult jurisdiction solely on a charge of first-degree robbery, Appellant argues that the trial court was required to dismiss counts two, three, and four of the indictment issued against him by the grand jury sitting for Monongalia County as the additional charges set forth in those counts were not considered at the transfer hearing. Upon our review of this matter, we conclude that the trial court did not commit error by permitting Appellant to be convicted and sentenced on charges that were factually connected to the first-degree robbery charge. Accordingly, the decision of the Circuit Court of Monongalia is affirmed.

## I.  Factual and Procedural Background

On February 12, 2005, Appellant was charged pursuant to a juvenile delinquency petition with the offense of first-degree robbery by violence. Mr. Brooks was seventeen years old at the time of the alleged crime. The robbery charge was filed in connection with an incident occurring on that same date in which Appellant and two other juveniles severely injured a victim during an attempted robbery by beating, kicking, and stomping him.[1] The victim remains in a persistent vegetative state and is not expected to emerge from that condition.

Following a hearing on May 5, 2005, Appellant was transferred from the juvenile jurisdiction of the circuit court to its adult

---

1. Appellant claims that he did not participate in the attack on the victim and only touched the victim's body while attempting to prevent the attack from continuing.

criminal jurisdiction. *See* W.Va.Code § 49–5–10(d)(2) (2001) (Repl.Vol.2004). On May 13, 2005, the grand jury returned an indictment against Appellant, charging him with first-degree robbery, conspiracy to commit first-degree robbery, malicious assault, and conspiracy to commit malicious assault.

On June 17, 2005, Appellant filed a motion to dismiss counts two, three, and four of the indictment on the grounds that the transfer motion filed by the State was predicated solely on first-degree robbery charges. When Appellant presented this motion at a pre-trial hearing on June 27, 2005, the trial court requested that the parties submit briefs on this issue. After considering the matter in full at a hearing on October 24, 2005, the trial court denied Appellant's motion to dismiss counts two, three, and four of the indictment[2] and ordered that the matter proceed to trial on all four of the counts contained in the indictment.

At the conclusion of the trial held on these charges in November 2005, Appellant was found guilty on each of the four charges. The trial court sentenced Appellant to two to ten years confinement for the malicious assault conviction; a concurrent sentence of one to five years for conspiracy to commit malicious assault; forty-five years for first-degree robbery; and a concurrent sentence of one to five years for conspiracy to commit robbery. The trial court ordered that the robbery sentence was to run consecutive to the malicious assault sentence.

Through this appeal, Appellant seeks a reversal of the trial court's decision not to dismiss counts two, three, and four of the indictment, the counts containing the charges for conspiracy to commit first-degree robbery; malicious assault, and conspiracy to commit malicious assault. Appellant maintains that the trial court did not have jurisdiction to try him on any charges other than the first-degree robbery charge as that charge was the sole charge considered at his transfer hearing.

## II. Standard of Review

■ Our standard of review is plenary as we recognized in syllabus point one of *Chrystal R.M. v. Charlie A.L.*, 194 W.Va. 138, 459 S.E.2d 415 (1995): "Where the issue on appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review." We proceed to determine whether the lower court had jurisdiction to proceed to trial on the charges brought against Appellant that are set forth in counts two, three, and four of the indictment at issue.

## III. Discussion

■ Arguing that this case presents a matter of first impression, Appellant maintains that the transfer statute under discussion requires that any charges upon which the State seeks to have a juvenile tried as an adult must be "state[d] with particularity" upon written motion. W.Va.Code § 49–5–10(a). Because the charges other than first-degree robbery were not included as part of the State's motion to transfer, Mr. Brooks argues that he was denied his due process rights at the transfer hearing in connection with those additional charges.

Responding to Appellant's argument, the State looks to additional statutory language in the transfer statute that requires the trial court to examine a variety of factors including the juvenile's age; physical condition; maturity; emotional attitude; home environment; school experience; prior history of juvenile delinquency; the nature of the instant charge; and prior efforts at rehabilitation within the juvenile system. *See* W.Va. Code § 49–5–10(a), (d), (e), (f), (g). In compliance with the provisions of the transfer statute, the State presented evidence at the transfer hearing regarding all of the above factors as well as specific details with regard to the assaultive conduct it alleged Mr. Brooks had committed upon the victim.[3] Be-

---

**2.** In its order entered on November 18, 2005, the trial court "ruled that the correct interpretation of the juvenile transfer code [sic] in West Virginia is that personal and subject matter jurisdiction is conferred upon the criminal court once transfer of the juvenile has been effected."

**3.** The State notes that the details of the assault were presented at each of the Appellant's hearings as a juvenile: the detention hearing; the preliminary hearing; and the juvenile transfer hearing.

cause the evidence presented at the transfer hearing encompassed conduct which pertained to all of the counts of the indictment and not just the robbery charge, the State contends that the transfer statute should not be interpreted to prohibit the additional charges.

In deciding how to interpret the juvenile transfer statute, the trial court looked for guidance to decisions issued by appellate courts in Kansas and Georgia.[4] By relying on the same decisional authority as the trial court, Rhode Island recently decided that additional charges can be brought in criminal court provided they are related to the same nucleus of facts at issue in the transfer hearing. *See State v. Day*, 911 A.2d 1042 (R.I. 2006). In *Day*, the Rhode Island Supreme Court addressed the issue of whether the Attorney General could charge a juvenile who had been transferred from the jurisdiction of the family court with offenses different from and/or in addition to those upon which the waiver decision was effected. 911 A.2d at 1044. Identifying the matter as one of first impression, the appellate court closely examined its statutory language to determine whether the legislature intended for the waiver that occurs following a transfer hearing to be a complete waiver of personal jurisdiction or merely a waiver of jurisdiction for the particular offense for which waiver was originally sought. *Id.* at 1047.

As an initial matter, the Court in *Day* acknowledged that "the great majority of courts faced with this question have held that prosecutors may charge a child who is waived from juvenile court jurisdiction with any crime that arises from the conduct for which the waiver was sought." 911 A.2d at 1051. After reviewing the decisions of other states on this issue as well as the history of its family court system, the Rhode Island Supreme Court reasoned that once a decision to transfer jurisdiction to the criminal courts has been reached, "there is no limitation to the charges that may be lodged against the child in the adult court, as long as those charges spring from the nucleus of operative

facts upon which the Family Court waiver of jurisdiction was based." *Day, id.* at 1054.

In crafting its ruling, the Court in *Day* found the reasoning employed in *State v. Randolph*, 19 Kan.App.2d 730, 876 P.2d 177 (1994), to be persuasive. Addressing whether a juvenile could be charged in adult court with charges not raised at the waiver hearing, the Court articulated in *Randolph:*

> [t]he juvenile court is to make the judicial determination of whether a juvenile should remain within the province of the juvenile court and not determine what charges the State can file. Once the juvenile court decides to waive jurisdiction ... and the respondent [juvenile] appears in the criminal court as a defendant, the criminal court acquires personal and subject matter jurisdiction over the case. The criminal court can try any additional charges that might arise from the same set of facts that spawned the juvenile case.... The State does not have to return to juvenile court and again seek its waiver of jurisdiction. It is sufficient that the procedure starts in juvenile court.

*Id.* at 180–81.

In the case before us, the trial court found wisdom in the reasoning employed by the appellate court in *Rocha v. State*, 234 Ga. App. 48, 506 S.E.2d 192 (1998). Like the Appellant in this case, the defendant in *Rocha* contended that the State wrongfully charged him with crimes that were not the subject of the transfer hearing. In rejecting this ground, the Court expounded on the futility of requiring pointless procedural steps:

> Our Supreme Court has previously held: " '[T]he concurrent jurisdiction of the superior court over capital felonies committed by juveniles must necessarily extend to related lesser crimes which are part of the same criminal transaction. To rule otherwise would be to bisect criminal conduct artificially and require the state to follow two procedures with no substantive meaning other than to satisfy procedural requirements, with the end result that the

---

4. *See State v. Randolph*, 19 Kan.App.2d 730, 876 P.2d 177 (1994), *Rocha v. State*, 506 S.E.2d 192 (1998).

case involving the lesser crime would be instituted in juvenile court and transferred to the superior court.... There is no loss of substantive protection of the juvenile, and the public's rights should not be impeded by meaningless procedural steps which delay the judicial process and conceivably could lead to the frustration of justice under the rigorous requirements of the double jeopardy clause.'"

*Rocha*, 506 S.E.2d at 195 (quoting *Reynolds v. State*, 266 Ga. 235, 466 S.E.2d 218 (1996)).

Advocating that we adopt the clear minority position, Appellant maintains that if the State wishes to charge a transferred juvenile with offenses that were not the subject of the transfer motion or hearing, it should be required to return to the court of original jurisdiction for an additional transfer hearing on those charges. While acknowledging the judicial inefficiency of such a requirement, Appellant nonetheless maintains that its position is compelled by rules of statutory interpretation. In contrast to some statutes that include language providing for the filing of new charges after the transfer has been effected, Appellant contends that our Legislature has not authorized the State to bring additional charges without first holding a transfer hearings on those charges. *See, e.g.*, R.I. Gen. Law § 14–1 –7.1(c) (2002) (providing that waiver of juvenile jurisdiction is "for the offense upon which the motion is based as well as for all pending and subsequent offenses of whatever nature"); Tenn.Code Ann. § 37–1–134(c) (2005) (providing that transfer "terminates jurisdiction of the juvenile court with respect to any and all delinquent acts with which the child may then or thereafter be charged"). Given the absence of similar express authorization for the filing of additional charges following a transfer in our statute, Appellant argues that the statute should be construed against the government and in favor of the individual, with transfer being the exception and not the rule. *See* Syl. Pt. 1, *State v. D.D.*, 172 W.Va. 791, 310 S.E.2d 858 (1983) (holding that ambiguous statutory language should be construed against transfer under well-established principle that transfer should be exception and not the rule).

Whereas an actual statutory ambiguity was presented in *D.D.*—whether the commission of two simultaneous crimes could invoke the mandatory transfer provision [5]—there is no comparable issue of ambiguous language in this case. *See* 172 W.Va. at 796, 310 S.E.2d at 862–63. Instead, the question presented here is whether the Legislature intended to transfer both personal and subject matter jurisdiction to the criminal courts as the result of the waiver of juvenile jurisdiction that is effected at the conclusion of a successful transfer hearing. *See* W.Va.Code § 49–5–10.

In this case, transfer from the juvenile court to the adult criminal court was mandatory based upon the provisions of West Virginia Code § 49–5–10(d)(2). That provision compels transfer where the charged offense is one of violence to the person which would be a felony if the juvenile were an adult and the charged juvenile "has been previously adjudged delinquent" for an offense that is a felony but for the child's age. *Id.* Appellant does not take issue with the mandatory nature of the transfer required in this case. He does take issue with the State's position that it has the authority to charge a juvenile upon a transfer with additional offenses that were not raised at the transfer hearing but which arise from the same factual core of alleged criminal activity.

Attempting to vitiate the reasoning employed in *Day*, Appellant cites language in the Rhode Island statute that expressly extends the waiver of juvenile jurisdiction to "all pending and subsequent offenses." R.I. Gen. Law § 14–1–7.1(c). Critically, however, the appellate court's analysis was not impelled by that statutory language. Rather than focusing on that language, the court was interpreting separate statutory language that referred to waiver based on the "offense charged" and referral to adult court "for the offense." Consequently, the Rhode Island

---

5. This Court held that the mandatory transfer provision of West Virginia Code § 49–5–10(d) required a temporally previous adjudication of delinquency and not just the contemporaneous commission of more than one crime that would be a felony if committed by an adult. *See D.D.*, 172 W.Va. at 792, 310 S.E.2d at 858–59, syl. pt. 2.

Court was faced with the exact issue we are: whether the adult charges must be precisely aligned with those brought pursuant to the transfer hearing. *See Day*, 911 A.2d at 1046–47. In reasoning through this issue, the Rhode Island Supreme Court found both the non-adjudicatory nature of the waiver hearing and the potential infringement on the charging powers of the state to be persuasive arguments in favor of allowing the state to charge a transferred juvenile with additional charges "arising from the nucleus of operative facts that served as the basis for the waiver motion." *Id.* at 1053.

In the case before us, the trial court observed that the language of the transfer statute refers to the transfer of a "juvenile proceeding" rather than the transfer of a particular "charge." W.Va.Code § 49–5–10(d). As the trial court implicitly recognized, the objectives that are to be accomplished at the transfer hearing are limited to determining whether there are statutory grounds for a transfer. And, as the court in *Randolph* aptly reasoned, "[t]he juvenile court is to make the judicial determination of whether a juvenile should remain within the province of the juvenile court and *not* determine what charges the State can file." 876 P.2d at 180 (emphasis supplied). Given the restricted purpose of the transfer hearing, the Court in *Day* allowed "that it would be illogical to conclude that the Legislature intended to give the Family Court the power to dictate what charges an Attorney General may bring in the adult court." 911 A.2d at 1053.

By demanding that the prosecuting attorney be required to petition for the transfer of a juvenile to adult criminal jurisdiction on all the charges for which the state ultimately will be indicting, Appellant claims that he is "not seeking to frustrate the judicial process"

but merely attempting to require procedural compliance.[6] More persuasive to this Court, however, is the reasoning applied in *Rocha* that by requiring multiple transfer hearings where the offenses at issue derive from the same pattern of facts the result is a "meaningless" elevation of form over substance. 506 S.E.2d at 195. Additionally, as the State observes, Appellant's due process violation is essentially a hollow claim in a case such as this where no additional protections will be afforded a juvenile defendant at a second transfer hearing. Because the evidence that would be offered by the State at a subsequent transfer hearing on offenses arising from the conduct that was initially charged in the juvenile petition essentially would mirror the evidence presented at the first transfer hearing, it stands to reason that Appellant was not effectively denied the opportunity to cross examine witnesses or to present witnesses pertaining to the alleged offenses. We observe that the juvenile court retains no discretion for entertaining additional matters that arise following a mandatory transfer.[7] Accordingly, there is no procedural basis for holding a secondary transfer hearing before the juvenile court subsequent to a mandatory transfer.

Based on the foregoing, we hold that where transfer of a juvenile delinquency proceeding from the juvenile jurisdiction of the court to the adult criminal jurisdiction is mandatory pursuant to West Virginia Code § 49–5–10(d)(2), as in this case, there is no statutory impediment that prevents the State from charging the juvenile by indictment with offenses that were not included in the transfer motion and/or hearing provided those additional offenses flow from the same factual allegations of criminal activity that were the subject of the transfer hearing.

---

6. Notwithstanding our ruling in this case, we express a clear preference for the state to include all offenses in the transfer motion and hearing on which it will seek to obtain an indictment against a juvenile defendant where the evidence supports the filing of such charges. Although we recognize the inapplicability of the criminal rules of procedure at the nonadjudicatory phase of a transfer hearing, we encourage the state to identify all the offenses upon which it will seek to charge the juvenile with upon transfer in the interest of promoting both full disclosure and to

avoid piecemeal litigation. *Cf.* W.Va.R.Crim.P. 8 (requiring mandatory joinder of two or more offenses that "are known or should have been known by the exercise of due diligence to the attorney for the state at the time of the commencement of the prosecution").

7. In contrast, the juvenile court clearly does retain jurisdiction to hear additional matters in those cases where transfer is discretionary.

Having determined that the trial court did not commit error in refusing to dismiss counts two, three, and four of the indictment, the decision of the Circuit Court of Monongalia is hereby affirmed.

Affirmed.