Leroy BENGE and Bonnie Gregory,
Appellants,

v.

COMMONWEALTH of Kentucky, Appellee.

Court of Appeals of Kentucky.

May 5, 1961.

Ray C. Lewis, Lewis & Weaver, London,
for appellants.

John B. Breckinridge, Atty. Gen., Martin Glazer, Asst. Atty. Gen., for appellee.

STEWART, Judge.

This is an appeal from a judgment entered on a verdict which found Leroy Benge, aged 21, and Bonnie Gregory, aged 16, guilty of storehouse breaking and fixed the punishment of each at confinement for one year in the penitentiary. See KRS 433.190. We shall herein refer to the parties who have appealed as "defendants."

Reversal of the judgment by Bonnie Gregory is sought on the ground, among other things, that, since he was an alleged juvenile offender, the Laurel Circuit Court never obtained jurisdiction to try and dispose of the case growing out of the indictment returned against him. Leroy Benge claims, among other things, the lower court abused its discretion when it refused to sustain his motion for a continuance and, as a consequence, committed an error that was prejudicial to his substantial rights. Other grounds are urged for reversal of the judgment but we conclude the above contention of each defendant has merit and we shall, in a great measure, confine our discussion in this opinion to these two grounds. Nevertheless, as each defendant will undoubtedly be tried again on the same charge we shall resolve those points defendants have raised that may recur at another trial.

■ Did the circuit court have authority to indict and try Bonnie Gregory for the offense of which he was convicted?

KRS 208.170(1) provides, insofar as it is pertinent, that if it appears a child sixteen years or older who is brought before a juvenile court for a hearing has committed a felony, and the juvenile judge believes the best interests of the child and of the public require the child to be tried as an adult criminal, "the (juvenile) court in its discretion may make an order transferring the case to the circuit court of the county in which the offense was committed." See KRS 208.020(2) which sets forth the maximum age a child may be dealt with under the above subsection.

The order of the juvenile court of Laurel County, in certifying the case of Bonnie Gregory to the Laurel Circuit Court for final disposition, recited that the purpose of such a transfer was "for indictment and trial as an adult for the crime of breaking and entering into Sparkman Ready Mix and London Concrete Block Co. and stealing therefrom * * *." However, Bonnie Gregory was thereafter actually indicted and tried for breaking, entering and stealing from a storehouse belonging to one *Hayner* Mills. The prosecuting witness who testified his store had been broken into was *Henry* Mills. The record contains no evidence which discloses that the Hayner Mills named in the indictment and the Henry Mills who testified at the trial are identical. It is not in dispute that the crime of breaking into and stealing from the storehouse of Hayner Mills (or of Henry Mills), of which Bonnie Gregory was accused and convicted in circuit court, is separate and distinct from the offenses of breaking and entering into and stealing from Sparkman Ready Mix and London Concrete Block Co., which last two cases were the only ones the juvenile court transferred to that court involving Bonnie Gregory.

The Commonwealth maintains Bonnie Gregory waived his right to question on this appeal the jurisdiction of the Laurel Circuit Court as to the case before us, because at no time during the trial did he object to the procedure whereby that court undertook to try and determine the indictment which it returned against him. The Commonwealth points out specifically that this defendant did not protest the name used in the indictment (Hayner Mills), or at any time object to the testimony of Henry Mills during the trial, or offer any evidence that they were not one and the same person, with the result that he is precluded from coming forward with such a defense on this appeal. Furthermore, it is argued the jurisdiction issue arising out of the

failure by the juvenile court to transfer the case in controversy was not listed as a ground for consideration by the lower court in the motion made by this defendant for a new trial.

■■■■ We find ourselves unable to accept the waiver theory advanced by the Commonwealth because of the view we have of the meaning and intent of the statutes of this state which apply to juvenile offenders. We construe the statutes that govern the proceedings that may be taken against a delinquent youth in a juvenile court or in a circuit court, after the proper transfer of such a case thereto, as establishing certain jurisdictional limitations and requirements, and not as providing merely personal rights or privileges in favor of a juvenile which the latter may or may not waive as he desires. We approve what was said in Ex parte Albiniano, 62 R.I. 429, 6 A.2d 554, 557, 123 A.L.R. 441, 445, when it spoke these words on this point:

"* * * Jurisdiction in proceedings such as are involved herein cannot be conferred on the superior court by the conduct of the accused minor, but depends upon the proper construction of the statute as applied to the facts then before the court. We find, therefore, that this contention advanced by the state, that the petitioner by his conduct waived certain rights, has no application in the present case."

In Heustis v. Sanders, Ky., 320 S.W.2d 602, it was held that the circuit court's jurisdiction is of a secondary and limited nature in respect to its dealing with the case of a juvenile offender. The juvenile court of each county, as provided by KRS 208.-020(1), "shall have exclusive jurisdiction in proceedings concerning any child, living, or found, in the county" who has committed a public offense; and a circuit court may receive the case of an alleged youthful offender for final disposition only by transfer from the juvenile court, pursuant to KRS 208.170(1). In Edwards v. Common-

wealth, 264 Ky. 4, 94 S.W.2d 25, in a prosecution in circuit court of a juvenile charged with a felony, it was held it must appear not only that the juvenile court had made an order transferring the case to circuit court for prosecution but also that all necessary steps to give the juvenile court jurisdiction to render such an order were followed. See also Robinson v. Kieren, 309 Ky. 171, 216 S.W.2d 925.

■■ We adhere to the rule that the statutory provisions governing the attainment of jurisdiction to proceed against a juvenile offender must be rigidly complied with in either juvenile or circuit court, as the case may be. See Heustis v. Sanders, cited above. Therefore, since the juvenile court of Laurel County did not first proceed against Bonnie Gregory as to the public offense of which he was convicted and thereafter transfer this particular case to circuit court in conformity with KRS 208.-170(1) for final trial, jurisdiction was not acquired by the latter court to prosecute Bonnie Gregory. It follows that the conviction of Bonnie Gregory must be set aside and held for naught.

It is our considered opinion Leroy Benge's motion for a continuance should have been sustained. A similar motion based upon the same averments contained in another affidavit was made by Bonnie Gregory, and likewise should have been sustained. It was shown that after the two defendants were indicted on June 6, 1960, they were arraigned on the following June 13th, and at that time their cases were set for trial four days later, or on June 17th. On the date of their arraignment they employed Ray C. Lewis as their attorney to represent them.

On June 17th, the day set for their trial, defendants and their attorney filed affidavits for a continuance until the next term, stating therein that they, had been unable to prepare their cases for trial. The reason given was that their attorney, after his employment, had been compelled to leave Laurel County on June 14th and par-

ticipate in a trial in the Harlan Circuit Court set for June 15th. This attorney stated in his affidavit he had returned to Laurel County, arriving at London, the county seat, at noon on June 16th, and, under the circumstances, had not had sufficient time to prepare the defense of each defendant or to procure the attendance in court of witnesses to testify in their behalf. They also said they had subpoenaed one Ernest Ray Fee, a witness who could account for the forty packages of cigarettes found in their possession, but the sheriff had been unable to find him, and they needed more time to enable them to locate this witness and produce him in court.

A counter affidavit filed by the Commonwealth's attorney recited that on June 13th, Ray C. Lewis, soon after he had been retained to represent defendants, explained in open court about his case set for trial in the Harlan Circuit Court and the predicament he would be placed in with reference to defendants' case because of his commitment; that the trial judge then advised defendants to secure other counsel, if Lewis could not be present on June 17th to represent them; and that Lewis then told the trial judge his law partner would take charge of the case if he did not return in time to ready himself for the trial.

Other counsel was not employed by defendants and Ray C. Lewis, their attorney, was clearly not ready for the trial of defendants when they appeared in court on June 17th. Notwithstanding this fact the circuit court ruled that the trial should proceed.

■ Section 188 of the Criminal Code of Practice sets forth the principle of law that a continuance may be granted upon sufficient cause shown by either party. We have stated in many of our cases that what constitutes a sufficient cause is a matter within the sound discretion of the trial court. However, the discretion when exercised which results in the denial of a continuance is reviewable by this Court. Woosley v. Commonwealth, Ky., 282 S.W.2d 625.

In Johnston v. Commonwealth, 276 Ky. 615, 124 S.W.2d 1035, 1038, we wrote: "A request for a continuance of a trial is but a means to an end. The end is a fair trial." This pertinent statement on the point under discussion appears in the very recent case of Perkins v. Commonwealth, Ky., 305 S.W.2d 937, 939: "The constitutional right to counsel would be almost worthless unless reasonable time were allowed counsel to familiarize himself with the case and to prepare the defense."

■ We believe the lower court abused its discretion when it refused to grant defendants a continuance. After they had hired an attorney and he had informed the trial judge beforehand that he would be inextricably tied up in another court until the day before their trial was to be held and would not be prepared to defend them, defendants were peremptorily told they must seek other counsel. This action of the lower court was an unwarranted thrust at their fundamental right to retain the attorney of their choice to handle their cases. When on the day the trial was set it developed that defendants had not followed the direction of the trial judge by selecting other counsel to represent them, he was evidently irked by their disregard of his instructions and, in a summary manner, forced them to submit to an immediate trial, knowing full well they were unprepared to defend themselves. Defendants' substantial rights were unquestionably violated when they were required to proceed with their trial under the circumstances.

■ We now turn our attention to other grounds that are assigned as errors which we believe should receive consideration, as they may arise at another trial of these defendants.

At the outset, defendants strongly insist they were entitled to a directed verdict, claiming the Commonwealth did not "make out a case" against them. We do not agree.

The evidence of Henry Mills was that his store was broken into during the night of

March 15, 1960, and a quantity of cigarettes and bologna sausage, two chickens, a knife, and other items of merchandise were stolen. The entry was made through a boarded-up window which had been previously broken. Upon discovery of the theft on the following morning, Mills followed the tracks of two men in the snow from the window for three or four hundred yards up the road to a place where the tracks disappeared.

Mills heard that a mule had been stolen from a nearby barn, so he walked one-half mile on down the road toward the barn, found the mule tracks, and followed them to within fifty yards of Clyde Gregory's house where the mule tracks turned around. At that point, he found part of a discarded raincoat with mule hair on it. He testified he saw a "print of where they set a sack down they had been carrying the stuff in" but he paid no attention to whether foot prints led off from this spot in any direction. He was present when an officer investigating the theft found a button near the tracks. Clyde Gregory is the brother of Bonnie Gregory.

The button later proved to be a match to those on a coat belonging to defendant, Leroy Benge, which coat showed a missing button. The fragment of raincoat corresponded to another piece of raincoat found in the former home of defendant, Bonnie Gregory; and a knife sheath similar to one that was stolen from the Mills store was also found in that house.

Defendants and several of their witnesses testified they went to the home of Bonnie Gregory's brother, Clyde, about 4:30 p. m. on March 15, 1960, and stayed until 9:00 a. m. the next day, and defendants were not near the store on the night it was broken into. Defendants had some cigarettes (about forty packs) which they said Benge had purchased from one Ernest Ray Fee for $1 and which they sold to Clyde Gregory for $2. The latter afterwards gave these cigarettes to Kentucky State Police Detective James L. Yaden, who had followed the mule tracks with Mills. The evidence discloses that these cigarettes were the same brands as some of the cigarettes taken from the Mills store. Ernest Ray Fee was subpoenaed but could not be located in Laurel County by the sheriff. Yaden testified Bonnie Gregory told him he took two frying chickens to his brother's house. Mills said he then investigated and discovered that two such chickens were missing from the store.

We have no difficulty in concluding that the evidence we have recited was sufficient to support the conviction of defendants.

■ The next complaint of defendants is that Charlie Pennington, a deputy sheriff of Laurel County, and James L. Yaden, the detective mentioned above, both of whom had investigated the store break-in under discussion, were permitted on direct examination, over the objection of defendants' attorney, to repeat statements made to them by Clyde Gregory and Betty, his wife, as to the time defendants came to their home. Although the Gregorys were then in court, neither had as yet been called upon to testify concerning the point in controversy, nor was it shown that either of the defendants were present when the statements attributed to them were made. It is contended this testimony was incompetent as hearsay.

This evidence was obviously inadmissible for the reason that the two officers were allowed to recite a portion of the conversation they had with the Gregorys during their investigation of the crime; that is, they were permitted to state what the Gregorys said as to the hour and day defendants arrived at their residence. Under the hearsay rule, and such evidence was of a hearsay nature, testimony must be rejected which has not been in some way subjected to the test of cross-examination under oath. See Kinder v. Commonwealth, Ky., 306 S.W.2d 265, 266.

■ Later, however, after Clyde Gregory had taken the stand as a witness for defendants and had fixed the time at 4:30 p. m. on March 15, 1960, when they had come to his

home, the trial judge properly ruled that Yaden and Pennington, after being called on rebuttal, could testify they heard Clyde Gregory state that defendants did not show up at his house until the morning of the next day (March 16th) at 4:30 a. m. The trial judge also correctly admonished the jury that this character of testimony was to be considered by them solely for the purpose of contradicting or impeaching Gregory's earlier inconsistent testimony, and was not to be received as substantive evidence. See 20 Am.Jur., Evidence, sec. 458, p. 405.

Certain remarks of defendant, Bonnie Gregory, were made after his arrest by the sheriff which tended to connect him with the commission of the crime, and it is insisted this evidence, which was objected to, should have been excluded because the other defendant was absent. Clearly such statements could be introduced as admissions against Bonnie Gregory's interest, but they were not competent to be used against his co-defendant, Leroy Benge, as he was not in the presence of the officer when such statements were made, and the trial judge should have so admonished the jury. This he did not do.

Defendants argue that the following instruction, given over their objection, was entirely wrong: "Instruction III. If upon the whole case you have a reasonable doubt of the defendants' having been proven to be guilty, you will find them not guilty."

Defendants maintain this instruction did not give the jury the right to convict one of them and acquit the other, which is what the jury should have been told. They rely on Howard v. Commonwealth, 240 Ky. 307, 42 S.W.2d 335, wherein an instruction was approved by this Court under which one of the defendants in that case could be found guilty and the other not guilty. If there be another trial of this case and the evidence be materially the same, we believe the instruction recommended for use in the Howard case would be a fairer one to give to the jury.

Wherefore, for the reasons shown the judgment is reversed and the case is remanded for proceedings in conformity with this opinion.