(876 P.2d 177)
No. 69,449

STATE OF KANSAS, *Appellee,* v. MICKEY A. RANDOLPH, *Appellant.*
Petition for review denied 255 Kan. 1006 (1994).

Opinion filed June 17, 1994.

*Julie A. Gorenc,* assistant appellate defender, and *Jessica R. Kunen,* chief appellate defender, for appellant.

*Jo Ann Van Meter,* assistant district attorney, *Joan M. Hamilton,* district attorney, and *Robert T. Stephan,* attorney general, for appellee.

Before BRISCOE, C.J., ROYSE, J., and STEPHEN D. HILL, District Judge, assigned.

HILL, J.: This is an appeal from a conviction for aggravated battery, K.S.A. 21-3414. Mickey A. Randolph, who was 16 years old at the time of the offense, was tried as an adult.

The parties do not dispute the facts of the case. During the evening of January 16, 1992, Randolph and two other youths confronted and fought with Lester Berry in Topeka. One of them demanded money from Berry. When he produced about 30 cents, someone knocked it to the ground and then all three young men began hitting him. Berry testified that he believed that Randolph also hit him with a bottle. Randolph denied this. The three assailants were soon picked up by the police.

Randolph's prosecution commenced with a complaint filed in the juvenile court in accordance with the Kansas Juvenile Offenders Code, K.S.A. 38-1601 *et seq*. The State charged Randolph with one count of attempted aggravated robbery, K.S.A. 21-3427 and K.S.A. 21-3301. The State filed a motion to waive juvenile court jurisdiction pursuant to K.S.A. 38-1636. The State also wanted the juvenile court, at the hearing, to decide the waiver of jurisdiction, to consider evidence, and to make findings in lieu of a preliminary examination pursuant to K.S.A. 22-2902. The State, at the waiver hearing, withdrew its request for a preliminary hearing when Randolph agreed, before the hearing, to stipulate to the motion to waive jurisdiction.

At the jurisdiction waiver hearing in juvenile court, the State maintained that the underlying complaint before the court was one count of attempted aggravated robbery, an offense that would constitute a felony if the respondent Randolph were an adult. When asked by the juvenile court judge for the factual basis of the motion to waive, the prosecutor responded that (1) Randolph was under 18 years of age, (2) he is alleged to be a juvenile offender based on a violation of K.S.A. 21-3301 and 21-3427, attempted aggravated robbery, (3) he is over 16 years old but younger than 18 years old, (4) "such offenses would be felonies if committed by an adult," and (5) Randolph's record, the serious, violent nature of this offense, Randolph's lack of amenability to programs available in juvenile court, and the safety of the community all compelled Randolph's prosecution as an adult. Randolph, through his attorney, stipulated to all of the State's allegations.

Based on those allegations, Randolph's stipulation, and the consent of his court-appointed attorney, the juvenile court ordered Randolph to stand trial as an adult. The State never informed

the juvenile court judge or Randolph that it intended to file additional felony charges against Randolph as an adult.

The State filed a three-count criminal complaint against Randolph, charging him as an adult with one count of aggravated battery, K.S.A. 21-3414, and one count of robbery, K.S.A. 21-3426, along with the original charge of attempted aggravated robbery. After a preliminary hearing on March 27, 1992, Randolph was bound over for trial on all three counts. At his trial, after objecting to the State filing the two additional felony charges, Randolph was found guilty of aggravated battery, not guilty of attempted aggravated robbery (the original charge in juvenile court), and not guilty of robbery. Randolph had never been charged in juvenile court with aggravated battery.

Randolph argues that the trial court committed three errors. He alleges that the criminal court was without jurisdiction to try his case because subject matter jurisdiction cannot be waived by a juvenile. Second, Randolph argues that the trial court allowed the State to improperly file two additional charges against him once he appeared in criminal court. Third, Randolph also argues that any stipulation he might have made about jurisdiction in juvenile court was not knowingly made because the State did not inform him, prior to his stipulation, that additional charges would or could be filed against him when he entered criminal court.

We will deal with Randolph's second assignment of error first. Whether the State can file two additional charges against a defendant, after the juvenile court has authorized his prosecution as an adult on a different charge, is a question of first impression in Kansas.

Courts in other jurisdictions that have ruled upon this matter rule in one of two different ways. The first group rules that jurisdiction over juveniles, both personal and subject matter, rests strictly and exclusively with the juvenile court. The juvenile court must first authorize any additional charges against a juvenile in those jurisdictions. *Robidoux v. Coker*, 383 So. 2d 719 (Fla. Dist. App. 1980), *Benge v. Commonwealth*, 346 S.W.2d 311 (Ky. App. 1961), *Gibson v. State*, 47 Wis. 2d 810, 177 N.W.2d 912 (1970). The second group rules that once the juvenile court waives jurisdiction, the criminal court has jurisdiction over the person and the subject matter. This means that the criminal court may try

lesser included crimes and additional criminal charges arising out of the same set of facts, which were not first brought in juvenile court. *Pharms v. State*, 477 N.E.2d 334 (Ind. App. 1985), *Johnson v. State*, 512 So. 2d 1246 (Miss. 1987), *State v. Garcia*, 93 N.M. 51, 596 P.2d 264 (1979). Since all these cases deal with statutes unique to their states, their value is in showing their approach to the problem and not the result.

In Kansas, prosecutions are public matters brought in the name of the State. The county or district attorney has total discretion in determining whether to prosecute, what charges to file, and whether to reduce charges. The power of the county or district attorney to determine the nature and severity of the charges against a defendant in a particular case is unrestricted. *State v. Pruett*, 213 Kan. 41, 515 P.2d 1051 (1973); see *State ex rel. Rome v. Fountain*, 234 Kan. 943, 678 P.2d 146 (1984).

Furthermore, in juvenile cases, the county or district attorney, alone, has the discretion to seek prosecution of a juvenile as an adult or to seek presentation of evidence to the juvenile court in lieu of a preliminary hearing.

"We agree with the State that it lies within the discretion of the prosecutor whether to present evidence of the alleged offenses at the waiver hearing. The prosecutor also has the discretion whether to request the court to make the findings required in a preliminary examination by K.S.A. 22-2902 and the finding that there is no necessity for a further preliminary examination. The court must then act judicially to determine whether it should consider the evidence as probative only on the issue of waiver or for the purpose of establishing probable cause." *In re Davis*, 234 Kan. 766, 771, 674 P.2d 1045 (1984).

In Kansas, the hearing to decide whether the court should waive juvenile jurisdiction is not adjudicatory.

"While a waiver hearing involves a substantial right subject to the requirements of due process, it is not adjudicatory in nature in that it does not result in any determination of guilt or innocence or in confinement or punishment. It is merely a preliminary process to determine the type of adjudicatory procedure to be carried out at a later date. The only decision is dispositional in that the court determines whether further proceedings will be under the juvenile offenders code or under the Kansas criminal code." *State v. Muhammad*, 237 Kan. 850, 856, 703 P.2d 835 (1985).

The nature of the charge (which is within the discretion of the prosecutor) is but one factor of eight for the juvenile court to

consider when making the decision to waive jurisdiction over a juvenile pursuant to K.S.A. 38-1636(e). Once the court makes that judicial determination to waive juvenile court jurisdiction, then all the doctrines of law that apply in criminal court apply to the case of the juvenile when he is prosecuted as an adult.

One of those doctrines of law concerns the bindover at a preliminary hearing. At a preliminary hearing, the trial court can add or change charges. "Kansas has long held that a defendant may be charged with one offense and 'bound over for another, if it shall appear on the [preliminary] examination that he is guilty of a public offense other than that charged in the warrant.' " *State v. Pioletti*, 246 Kan. 49, 60, 785 P.2d 963 (1990). Therefore, Randolph could have been bound over on charges at his preliminary hearing that were not first brought in juvenile court if it appeared to the trial court that Randolph was "guilty of a public offense other than that charged in the warrant."

Kansas law, with eight statutory factors for the court to consider as found in K.S.A. 38-1636(e), does not require a strict policy of bringing every charge before the juvenile court for its approval. The juvenile court is to make the judicial determination of whether a juvenile should remain within the province of the juvenile court and not determine what charges the State can file. Once the juvenile court decides to waive jurisdiction, pursuant to K.S.A. 38-1636(f)(3), and the respondent appears in the criminal court as a defendant, the criminal court acquires personal and subject matter jurisdiction over the case. The criminal court can try any additional charges that might arise from the same set of facts that spawned the juvenile case, whether the charges come from the State filing additional charges prior to the preliminary hearing or by the trial court binding the defendant over on different charges at the preliminary hearing. The State does not have to return to juvenile court and again seek its waiver of jurisdiction. It is sufficient that the procedure starts in juvenile court.

Therefore, the trial court did not err when it permitted the continuation of the prosecution of Randolph on two different criminal charges that had not originally been filed in juvenile court.

There is a special statutory rule, however, for juveniles under the age of 16 years. If the juvenile was 14 or 15 years old at the

time of the commission of the offense and the offense charged was a class A or B felony committed prior to July 1, 1993, or an off-grid crime or a nondrug severity level 1, 2, or 3 felony or a severity level 1 or 2 drug felony committed after July 1, 1993, then K.S.A. 38-1636 states:

"(i) If the respondent is prosecuted as an adult under subsection (f)(1) or (f)(2) [described above] and convicted of a lesser included offense, the respondent shall be a juvenile offender and receive an authorized disposition pursuant to K.S.A. 38-1663, and amendments thereto."

This simply means that in those specific cases the defendant would again become a respondent and return to juvenile court for disposition of the case. The legislature could have directed that this procedure should be followed for juveniles 16 or older as well, but chose not to do so.

Randolph's initial argument of error centers on whether a juvenile may consent or stipulate to the waiver of subject matter jurisdiction. He argues that the authority to determine whether a juvenile is to be tried as an adult resides exclusively with the juvenile court.

The statute that deals with jurisdiction over juvenile offenders, K.S.A. 38-1604, indicates that "[e]xcept as provided in K.S.A. 38-1636 [waiver of juvenile court jurisdiction] and 21-3611 [aggravated juvenile delinquency] . . . proceedings concerning a juvenile who appears to be a juvenile offender shall be governed by the provisions of this code."

Statutory procedures that permit the prosecution of certain juveniles as adults are found within the Kansas Juvenile Offenders Code. K.S.A. 38-1636 provides:

"(a) At any time after commencement of proceedings under this code against a respondent who was: . . . (2) 16 or more years of age at the time of the offense alleged in the complaint and prior to entry of an adjudication or the beginning of an evidentiary hearing at which the court may enter adjudication as provided in K.S.A. 38-1655, and amendments thereto, the county or district attorney may file a motion requesting that the court authorize prosecution of the respondent as an adult under the applicable criminal statute.

"(b) The motion may also contain a statement that the prosecuting attorney will introduce evidence of the offenses alleged in the complaint and request that, on hearing the motion and authorizing prosecution as an adult under this code, the court may make the findings required in a preliminary ex-

amination provided for in K.S.A. 22-2902, and amendments thereto, and the finding that there is no necessity for further preliminary examination.

. . . .

"(e) In determining whether or not prosecution as an adult should be authorized, the court shall consider each of the following factors: (1) The seriousness of the alleged offense and whether the protection of the community requires prosecution as an adult; (2) whether the alleged offense was committed in an aggressive, violent, premeditated or willful manner; (3) whether the offense was against a person or against property, greater weight being given to offenses against persons, especially if personal injury resulted; (4) the number of alleged offenses unadjudicated and pending against the respondent; (5) the previous history of the respondent, including whether the respondent had been adjudicated a delinquent or miscreant under the Kansas juvenile code or a juvenile offender under this code and, if so, whether the offenses were against persons or property, and any other previous history of antisocial behavior or patterns of physical violence; (6) the sophistication or maturity of the respondent as determined by consideration of the respondent's home, environment, emotional attitude, pattern of living or desire to be treated as an adult; (7) whether there are facilities or programs available to the court which are likely to rehabilitate the respondent prior to the expiration of the court's jurisdiction under this code; and (8) whether the interests of the respondent or of the community would be better served by criminal prosecution. The insufficiency of evidence pertaining to any one or more of the factors listed in this subsection shall not in and of itself be determinative of the issue. Subject to the provisions of K.S.A. 38-1653, and amendments thereto, written reports and other materials relating to the respondent's mental, physical, educational and social history may be considered by the court.

"(f) The court may authorize prosecution as an adult upon completion of the hearing if the court finds that the respondent was:

. . . .

(3) 16 or more years of age at the time of the alleged commission of the offense and that there is substantial evidence that the respondent should be prosecuted as an adult for the offense with which the respondent is charged. In that case, the court shall direct the respondent be prosecuted under the applicable criminal statute and that the proceedings filed under this code be dismissed.

"(g) If the respondent is present in court and the court also finds from the evidence that it appears a felony has been committed and that there is probable cause to believe the felony has been committed by the respondent, the court may direct that there is no necessity for further preliminary examination on the charges as provided for in K.S.A. 22-2902, and amendments thereto. In that case, the court shall order the respondent bound over to the district judge having jurisdiction to try the case.

"(h) If the respondent is convicted, the authorization for prosecution as an adult may attach and apply to any future acts by the respondent which

are or would be cognizable under this code if the order of the court so provides."

A review of the cases that deal with this subject reveals that subject matter jurisdiction over juvenile offenses rests exclusively with the juvenile court. *State v. Mayfield*, 241 Kan. 555, 561, 738 P.2d 861 (1987), provides:

"Thus, we think it is abundantly clear that the Kansas juvenile code (and now the Kansas juvenile offenders code) established an exclusive *procedure* for those subject to its provisions . . . . To obtain such jurisdiction the proceedings had to be instituted under the provisions of the Kansas juvenile code . . . . Failure of the State to proceed in accordance with the code deprived the court of jurisdiction to accept appellant's . . . plea." (Emphasis added.)

In *Mayfield*, the defendant was charged as an adult, pled guilty as an adult, and was sentenced as an adult. But, he was a juvenile when he committed the crime. The Supreme Court reversed his conviction based upon the trial court lacking subject matter jurisdiction. The court held:

"At the outset we note that subject matter jurisdiction cannot ordinarily be waived. In *In re Estate of Freshour*, 177 Kan. 492, Syl. ¶ 3, 280 P.2d 642 (1955), we held that '[j]urisdiction of the subject matter of an action is vested by statute and cannot ordinarily be conferred on a court by consent, waiver or estoppel.' " 241 Kan. at 558.

In contrast to *Mayfield*, Randolph's prosecution started in juvenile court. The State, seeking his prosecution as an adult, filed the appropriate motion. At the hearing upon this motion, the juvenile court carefully and meticulously probed Randolph's understanding of his rights as a juvenile and carefully explained to Randolph the legal safeguards that exist for his protection. Randolph had counsel present. Randolph steadfastly maintained that he wanted to be treated as an adult.

There is ample evidence in the record that calls for Randolph's prosecution as an adult. At the waiver hearing, the juvenile court could consider Randolph's attitude and his desire to be treated as an adult. The stipulation that Randolph entered was but one factor for the juvenile court to consider. Randolph did not dispute the factual allegations made by the State at the jurisdiction waiver hearing. He, in fact, stipulated to them. Collectively, those allegations compile a rough approximation of the eight factors a

court is to consider when confronted with a motion to waive juvenile court jurisdiction under K.S.A. 38-1636(e).

The juvenile court could also consider its own records of Randolph being found a juvenile offender in Shawnee County in 1987 and again in 1988. The court could also consider that it sent Randolph to the youth center as a juvenile offender in 1988. The juvenile court also considered the violent nature of the crime charged, namely, attempted aggravated robbery.

We cannot agree that the juvenile court waived jurisdiction here based solely upon Randolph's stipulation. Randolph and the State both inaccurately describe the proceeding as a mere formality, as if he came to court and "waived" jurisdiction. The record reveals that the trial court based its waiver of jurisdiction upon a proffer of evidence along with Randolph's stipulation. A juvenile can stipulate to allegations that are made against him in a motion to waive juvenile court jurisdiction. We find no error in the fact that the juvenile court accepted Randolph's stipulation to the allegations made by the State in its motion to waive jurisdiction. The juvenile court must make the determination to waive jurisdiction and can take into account the juvenile's stipulation along with evidence concerning the eight factors in K.S.A. 38-1636(e). The decision to waive juvenile court jurisdiction in this case was not made just by Randolph himself, or by the State, as it was in *Mayfield*.

Finally, Randolph argues that he did not knowingly or voluntarily enter his stipulation because he was not aware that the State intended to file additional charges against him as an adult.

While it is true that a juvenile may waive certain rights, such a waiver must be made knowingly and voluntarily. *Mayfield*, 241 Kan. at 557 (citing *State v. Muhammad*, 237 Kan. at 856). Randolph did not waive jurisdiction in this case; he entered into a stipulation concerning the basis of the State's motion to waive juvenile court jurisdiction. The juvenile court carefully explained to Randolph his rights as a juvenile charged as an offender.

Randolph was firm in his desire to be treated as an adult. Randolph was represented by able counsel in the juvenile court. Nothing in the record indicates that Randolph was either coerced into entering a stipulation or tricked by the State through some

false promise. Their agreement simply relieved the State of the necessity of calling witnesses at the waiver hearing.

An evidentiary stipulation made by a juvenile at a juvenile court hearing to waive juvenile court jurisdiction is not rendered involuntary simply because the juvenile is not aware of all possible charges that could be filed against him as an adult. As a practical matter, the State cannot always predict accurately what will happen. At a subsequent preliminary hearing, the court could bind the defendant over for trial on a different charge, or at a jury trial the defendant could be found guilty of lesser included crimes.

We do not find that Randolph's stipulation became "involuntary" simply because he was found guilty of a crime that differed from the original charge in juvenile court. Randolph was not convicted of his crime as a result of the stipulation that he made in juvenile court, but he was convicted by the evidence of his actions. This is not a case where the State coerced or tricked a defendant into making an admission or entering a guilty plea. Nor does this case involve a confession or statement made by Randolph. The only right waived by Randolph was his right to confront and cross-examine the witnesses that the State could have called at his waiver of jurisdiction hearing.

Affirmed.