STATE

v.

Corey DAY.

No. 2006–8–C.A.

Supreme Court of Rhode Island.

Dec. 18, 2006.

Aaron L. Weisman, Esq., Providence, for Plaintiff.

Richard K. Corley, Esq., for Defendant.

Present: WILLIAMS, C.J., GOLDBERG, FLAHERTY, SUTTELL, and ROBINSON, JJ.

## OPINION

Justice FLAHERTY, for the Court.

When a child is waived from the jurisdiction of the Family Court pursuant to G.L.1956 §§ 14–1–7 and 14–1–7.1 to stand trial as an adult, is the Attorney General then prohibited from charging the child with offenses different from, and/or in addition to, those upon which the waiver originally was based? In this case of first impression, it is our opinion that there is nothing in the statutory scheme that restricts the Attorney General from bringing charges against the child in the Superior Court which are different than those that served as the basis for waiver from the Family Court, provided the new charges arise from the same nucleus of operative facts.

On January 28, 2004, the Ocean Tides Residential Treatment Program (Ocean Tides or the Ocean Tides facility) was broken into, and one of its employees, Christopher Wilson, later was found bound, gagged, and imprisoned in a walk-in freezer on the premises. The defendant, Corey Day (defendant or Day), who was a juvenile at the time, was arrested and accused

of the break-in. Because Day had not reached the age of majority at the time of his arrest, the Family Court had exclusive jurisdiction over him. Pursuant to §§ 14–1–7 and 14–1–7.1, the Attorney General moved that the Family Court waive jurisdiction over Day so that he could be tried as an adult for the criminal charges stemming from the incident.[1] In his waiver motion, the Attorney General contended that the seventeen-year-old Day had committed four separate offenses: (1) breaking and entering; (2) second-degree robbery; (3) kidnapping; and (4) assault with intent to commit robbery and kidnapping.

After a hearing on November 8, 2004, the Family Court granted the state's motion and ordered Day waived from its jurisdiction, and it ordered him "held for trial under the procedure of the court which would have jurisdiction of such offense if committed by an adult."

A grand jury subsequently indicted Day for (1) burglary; (2) first-degree robbery; (3) felony assault; (4) kidnapping; and (5) larceny of goods valued at greater than $500. The defendant then moved to dismiss the indictment based on Rule 12(b)(2)[2] of the Superior Court Rules of Criminal Procedure on the ground that the Superior Court lacked jurisdiction to hear the case because the indictment impermissibly charged him with crimes that were different from, greater than, and in addition to, the offenses for which he was

---

1. General Laws 1956 14–1–7 allows the Attorney General to seek waiver (1) if a child is charged with an offense punishable by life imprisonment if committed by an adult; or (2) if a child sixteen years of age or older is charged with an offense that would constitute a felony if committed by an adult.

2. Rule 12(b)(2) of the Superior Court Rules of Criminal Procedure says, "all * * * defenses and objections based on defects in the institu-

tion of the prosecution or in the indictment, information, or complaint other than that it fails to show jurisdiction in the court or to charge an offense may be raised only by motion before trial. * * * Lack of jurisdiction or the failure of the indictment, information, or complaint to charge an offense shall be noticed by the court any time during the pendency of the proceeding."

waived by the Family Court. The defendant argued that the Family Court found probable cause only for the charges of (1) breaking and entering; (2) second-degree robbery; (3) kidnapping; and (4) assault with intent to commit robbery and kidnapping.[3] The defendant contended that § 14–1–7.1 prohibited the state from charging him with crimes different from those for which the Family Court found probable cause and that served as the basis for the waiver. A justice of the Superior Court agreed with Day, and he granted the motion to dismiss the indictment. The state timely appealed. We reverse.

## Standard of Review

■ "This Court reviews questions of statutory interpretation *de novo*, * * *, and in undertaking this analysis, we apply our well-established maxims of statutory construction." *State v. Oliveira*, 882 A.2d 1097, 1110 (R.I.2005). "It is well settled that when the language of a statute is clear and unambiguous, this Court must interpret the statute literally and must give the words of the statute their plain and ordinary meanings." *State v. DiCicco*, 707 A.2d 251, 253 (R.I.1998) (quoting *Accent Store Design, Inc. v. Marathon House, Inc.*, 674 A.2d 1223, 1226 (R.I. 1996)). "Moreover, when we examine an unambiguous statute, 'there is no room for statutory construction and we must apply

the statute as written.'" *Id.* (quoting *In re Denisewich*, 643 A.2d 1194, 1197 (R.I. 1994)). However, "[i]f we discern a statutory ambiguity, this Court establishes and effectuates the legislative intent behind the enactment." *State v. Fritz*, 801 A.2d 679, 682 (R.I.2002). And, "it is equally well established that, when confronted with statutory provisions that are unclear or ambiguous, this Court, as final arbiter of questions of statutory construction, will examine statutes in their entirety, and will 'glean the intent and purpose of the Legislature "from a consideration of the entire statute, keeping in mind [the] nature, object, language and arrangement" of the provisions to be construed.'" *DiCicco*, 707 A.2d at 253 n. 1 (quoting *In re Advisory to the Governor*, 668 A.2d 1246, 1248 (R.I. 1996) and *Algiere v. Fox*, 122 R.I. 55, 58, 404 A.2d 72, 74 (1979)).

## Analysis

This case presents an issue of first impression for this Court and requires us to take an exacting look at the language of §§ 14–1–7 and 14–1–7.1. Together, these two statutes set forth the requirements for waiver of jurisdiction of the Family Court over a child who has been accused of certain misconduct so that the child may be tried as an adult. Generally, when a juvenile is accused of conduct that would constitute a crime if committed by an adult,[4]

---

3. It should be noted that, although both parties seem to accept that the Family Court waived jurisdiction based on these specific statutory offenses, the court's orders waiving jurisdiction do not refer to the state criminal statutes either by title or section number. Instead, the Family Court justice's waiver order said that he found probable cause to believe that Day did (1) "break and enter in the night time, with the intent to commit any crime, * * *;" the Ocean Tides facility; (2) "commit robbery of Christopher Wilson by force of threat, without a weapon and no injury, and the victim is neither elderly or handicap;" (3)

"without lawful authority forcibly seize and confine and imprison and inveigle and kidnap Christopher Wilson with intent to cause Christopher Wilson to be imprisoned, secretly confined within this state against his will;" and (4) "make an assault upon Christopher Wilson with intent to commit Robbery and Kidnapping."

4. Section 14–1–3(5) says that the term delinquent "when applied to a child means and includes any child who has committed any offense which, if committed by an adult, would constitute a felony, or who has on

the matter is adjudicated under the exclusive jurisdiction of the Family Court, and the child is subject only to a determination of delinquency. However, when the Family Court waives its jurisdiction under §§ 14–1–7 and 14–1–7.1, the child may be tried as an adult, and sentenced as an adult if he is found guilty. The issue squarely presented to us by the facts of this case is whether §§ 14–1–7 and 14–1–7.1 require that, after a waiver has been granted, the charges brought against a child in the Superior Court must be precisely aligned with the charges set forth in the Family Court's waiver order.

Section 14–1–7 is entitled "Waiver of jurisdiction or certification hearing" and says, in relevant part,

"(a) If any child is charged with an offense which would be punishable by life imprisonment if committed by an adult, that child, upon motion of the attorney general, shall be brought before the court and the court shall conduct a waiver hearing pursuant to § 14–1–7.1.

"(b) Any child sixteen (16) years of age *or older who is charged with an* offense which would constitute a felony if committed by an adult shall, upon motion of the attorney general, be brought before the court and the court shall conduct a waiver hearing pursuant to § 14–1–7.1."

Section 14–1–7.1 is entitled "Waiver of jurisdiction—Proof" and says:

"(a) Upon a motion by the attorney general pursuant to § 14–1–7, the court shall conduct a hearing at which it shall be the duty of the attorney general to produce evidence to enable the court to determine:

more than one occasion violated any of the other laws of the state or of the United States or any of the ordinances of cities and towns,

"(1) That probable cause exists to believe that the offense charged has been committed and that the child charged has committed it, unless the proof has been elicited at a prior hearing on detention of the juvenile and the findings have been made by the same justice of the family court who is conducting the waiver proceeding; and

"(2) That the child's past history of offenses, history of treatment, or the heinous or premeditated nature of the offense is such that the court finds that the interests of society or the protection of the public necessitate the waiver of jurisdiction of the court over the child.

"(b) If the court finds that subdivisions (a)(1) and (a)(2) of this section have been proven by a preponderance of evidence, it may waive jurisdiction over the child and refer the child to the appropriate adult court to be tried for the offense as an adult.

"(c) A waiver of jurisdiction over a child pursuant to this section shall constitute a waiver of jurisdiction over that child for the offense upon which the motion is based as well as for all pending and subsequent offenses of whatever nature, and the child shall be referred to the court which would have had jurisdiction if the offense had been committed by an adult. In the event that the child is acquitted of the offense for which the waiver has been sought, the waiver shall be vacated."

The defendant argues that the language of § 14–1–7.1(b) is clear and unambiguous, and that the plain meaning of the words "to be tried for the offense as an adult" bars the Attorney General from charging a child in the Superior Court with any crimes different from—including those

other than ordinances relating to the operation of motor vehicles."

that constitute a more serious offense or a lesser included offense—or in addition to those for which waiver was granted in the Family Court. According to defendant, the words "the offense," used repeatedly in § 14–1–7.1, can mean only a particular crime as defined by the laws of this state. The defendant claims further support for his argument in the last sentence of § 14–1–7.1(c), that requires a waiver to be vacated in the event that an accused is "acquitted of the offense for which the waiver has been sought." This precise language, he argues, requires that any and all offenses for which waiver is sought must be included verbatim in the charges brought against the child if he is tried subsequently as an adult in the Superior Court. It is central to defendant's interpretation that when the Family Court waives jurisdiction of the child under §§ 14–1–7 and 14–1–7.1, it does so only with respect to its jurisdiction over the offense charged, but not over the child himself.

The state agrees with defendant that § 14–1–7.1 is clear and unambiguous in its mandate but, not surprisingly, disagrees about what the statute actually means. The state contends that the language "as well as for all pending and subsequent offenses of whatever nature" present in § 14–1–7.1(c) clearly indicates that a prosecutor is free to charge a child as an adult in the Superior Court with any and all crimes arising from the conduct that formed the basis of the waiver. This, urges the state, includes crimes that con- stitute a more serious offense or lesser included offenses. The words "the offense," the state argues, do not mean the specific charge alleged in the waiver motion, but rather the bundle of facts comprising the criminal incident that led to the waiver in the first place. According to the state, this interpretation makes sense because §§ 14–1–7 and 14–1–7.1 can be read only to mean that when the Family Court waives its jurisdiction, that waiver extends to the child personally and not, as defendant contends, just to the offense for which the waiver is sought.

After careful review, we conclude that the terms of this statute are neither clear nor unambiguous. The ambiguity in the statute lies in the language of § 14–1–7.1(b). That section says that once the Family Court finds that probable cause exists to believe that a juvenile has committed a particular "offense charged," and that certain additional factors are present,[5] the court "may waive jurisdiction over the child and refer the child to the appropriate adult court to be tried *for the offense* as an adult." *Id.* (Emphasis added.)

■ The issue to be decided, then, is framed by the ambiguity in the statute: did the Legislature intend for a waiver of jurisdiction under §§ 14–1–7 and 14–1–7.1 to constitute a complete waiver of personal jurisdiction over the child, or merely a waiver of jurisdiction for the particular offense for which the child is waived?[6] To

---

5. Section 14–1–7.1(a)(2) requires that certain factors must be met prior to the Family Court justice's decision to waive. Namely, the justice must find that "the child's past history of offenses, history of treatment, or the heinous or premeditated nature of the offense is such that the court finds that the interests of society or the protection of the public necessitate the waiver of jurisdiction of the court over the child." *Id.*

6. The defendant urges that if we hold this statute to be ambiguous we are thereby constrained to interpret the statute in accordance with the policy of lenity and adopt defendant's construction because it is the less harsh of the two opposing interpretations set forth by the state and defendant. This argument is misplaced. The policy of lenity applies to the construction of criminal statutes and requires that we adopt the less harsh of two possible meanings when faced with an

resolve this ambiguity, we must "glean the intent and purpose of the Legislature 'from a consideration of the entire statute, keeping in mind [the] nature, object, language and arrangement' of the provisions to be construed." *DiCicco,* 707 A.2d at 253 n. 1 (quoting *In re Advisory to the Governor,* 668 A.2d at 1248 and *Algiere,* 122 R.I. at 58, 404 A.2d at 74). We begin our analysis with a brief history of the Family Court and a discussion of the jurisdictional interplay between the Family Court and the Superior Court with respect to juveniles.

## I.

## History of the Rhode Island Family Court

This nation's early treatment of juveniles accused of criminal conduct was much harsher than it is today. Until the late nineteenth century, most juvenile offenders were treated as adults, consistent with the common law view that only children under the age of seven were irrebuttably incapable of forming criminal intent. Toward the end of the nineteenth century, legislation in states throughout the country "gave 'criminal courts discretion either to sentence juveniles to reform school or to impose "such punishment as [was] otherwise provided by law." ' " Laureen D'Ambra, *A Legal Response to Juvenile Crime: Why Waiver of Juvenile Offenders is Not a Panacea,* 2 Roger Williams U.L.Rev. 277, 279–80 (1997) (quoting John J. Cloherty III, Note, *The Serious Juvenile Offender in the Adult Criminal System: The Jurisprudence of Rhode Island's Waiver*

*and Certification Procedures,* 26 Suffolk U.L.Rev. 407, 414 (1992)). Then, in 1899, the Juvenile Court Act was passed in Illinois and the first juvenile court was created in Chicago. This presaged a new trend in the United States, and "[w]ithin twenty years, all but three states had created similar juvenile systems." Lynn A. Foster, *School Shootings and the Over-reliance Upon Age in Choosing Criminal or Juvenile Court,* 24 Vt. L.Rev. 537, 540 (2000).

The philosophy underlying the movement to create juvenile justice systems, separate from the adult criminal system, stemmed from the belief that people under a certain age inherently were less culpable than were adults. Society's goal for juveniles, it was believed, should be to rehabilitate through treatment and supervision, an option not available under the punishment-driven adult criminal system. As a result of their philosophical underpinnings, the newly created juvenile courts of the various states differed greatly from their adult court counterparts. "The hearings were civil and confidential in nature," and "[r]ehabilitative 'sentencing,' left almost entirely to the judge's discretion, varied greatly with each case because of the diverse needs of each individual youth." Julie B. Fails, *Statutory Exclusion—When the Protector Becomes the Abuser,* 32 Suffolk U.L.Rev. 81, 85 (1998).

Following the national trend, the Rhode Island juvenile system began to take shape in the early 1900s. In 1944, the Rhode Island Legislature removed what was then

ambiguous criminal statute. *See State v. Smith,* 766 A.2d 913, 924 (R.I.2001) (" 'When the meaning of a criminal statute is ambiguous, the policy of lenity in the construction of criminal statutes requires that the less harsh of two possible meanings be adopted.' "). The waiver statute at issue in this case is civil in nature and deals solely with waiver of the

Family Court's jurisdiction over a child, not with the criminality of the conduct in question. It neither describes a criminally prohibited course of conduct, nor does it prescribe a punishment for a particular set of facts constituting a violation of the criminal code. The rule of lenity therefore does not apply to the construction of §§ 14–1–7 and 14–1–7.1.

called the juvenile court from the jurisdiction of the District Court, created Rhode Island's first fully independent juvenile court, and gave that new court its own chief justice. P.L.1944, ch. 1441. Eventually, in 1961, the juvenile court was merged with the Family Court, which assumed jurisdiction over juvenile offenders. P.L.1961, ch. 73. The Family Court's jurisdiction was both original and exclusive and it extended to, among other things, the adjudication of matters involving juveniles alleged to be either wayward or delinquent.

■ As it exists today, the Family Court is a court of limited statutory jurisdiction, *State v. Kenney*, 523 A.2d 853, 854 (R.I.1987) ("the Family Court is a court of limited jurisdiction whose powers are strictly limited to those conferred by the Legislature"), and its governing statutes give it subject matter jurisdiction only over a very narrow range of criminal violations dealing with offenses committed by adults against either children or members of the offender's family. Thus, children accused of conduct that would amount to a crime if committed by an adult are not actually charged with, tried for, or convicted of the underlying crime in the Family Court. Indeed, according to § 14–1–40(a),

a juvenile never can be "charged with or convicted of a crime in *any* court, except as provided in [that] chapter." (Emphasis added.) Instead, juveniles accused of conduct that would be otherwise criminal in nature are brought before the Family Court on delinquency petitions and their conduct is evaluated through an adjudication governed by chapter 1 of title 14 and the Family Court Rules of Juvenile Proceedings.[7] So, although the Family Court has exclusive personal jurisdiction over juveniles appearing before it on delinquency petitions, it lacks the subject matter jurisdiction needed to adjudge a juvenile's behavior criminal in the traditional sense.[8]

■ On the other hand, the Superior Court is a court of general jurisdiction, and it is fully cloaked with the authority to hear cases involving violations of our criminal laws. Conversely, in the absence of a waiver from the Family Court, the Superior Court lacks personal jurisdiction to adjudicate allegations of criminal conduct with respect to children; that is the exclusive province of the Family Court. The purpose of this jurisdictional division is, as we have stated in prior cases, "to guard * * * [children] against the stigma attaching to criminal proceedings." *State v.*

7. While it is true that G.L.1956 § 11–9–9 vests the Family Court with subject matter jurisdiction over a child's commission of certain "criminal offenses," § 11–9–9 also instructs that, with respect to those offenses, the Family Court "shall have the authority to impose sentence as set forth in chapter 1 of title 14." As we have already pointed out, § 14–1–40 prohibits the conviction of a child of a crime in the Family Court or any other court except as provided in that chapter. (Notably, §§ 14–1–7 and 14–1–7.1 appear to be the only means provided by chapter 1 of title 14 in which a child may be charged and convicted of a crime.) Thus, with respect to children, the adjudication of any of the criminal offenses enumerated in § 11–9–9 cannot be truly considered criminal in light of the

clear mandate of § 14–1–40 prohibiting the conviction of children.

8. This is not to say that the Family Court does not have jurisdiction to adjudicate the actions of children which, if committed by an adult, would be criminal. As we previously have iterated, the Family Court is vested with exclusive original jurisdiction over delinquent and wayward children. The distinction lies in the fact that delinquency determinations, although requiring certain due process considerations, including a burden on the state to prove guilt beyond a reasonable doubt, *see In re John D.*, 479 A.2d 1173 (R.I.1984) (citing *Gonsalves v. Devine*, 110 R.I. 515, 294 A.2d 206 (1972)), are civil rather than criminal in nature.

*Cook*, 99 R.I. 710, 713, 210 A.2d 577, 579 (1965) (quoting *Givardi v. Juvenile Court*, 49 R.I. 336, 337, 142 A. 542, 542 (1928)).

Sections 14–1–7 and 14–1–7.1 serve as a jurisdictional bridge between the two courts. Section 14–1–7 says that waiver of jurisdiction in the Family Court is appropriate for either (1) any child who is accused of conduct that, if committed by an adult, would constitute a crime that would be punishable by life imprisonment, or (2) a child who is sixteen years or older and who is accused of conduct that otherwise would constitute a felony. Section 14–1–7.1 delineates the factors that the Family Court justice must consider in deciding whether to waive a child from the jurisdiction of that court.

First, the justice must assess whether the Attorney General has produced enough evidence to find that probable cause exists to believe that the child in question has committed the act upon which the motion to waive is based. Second, if the justice finds that such probable cause exists, he or she then must find that either the heinous nature of the juvenile's alleged conduct by itself, or the nature of the juvenile's act in conjunction with his or her past behavior and treatment in the juvenile system, indicates that the child is not amenable to rehabilitation.[9] If the Family Court justice finds that the statutory requirements have been met, waiver is appropriate because the state's interest in protecting the child from the stigma of conviction is outweighed both by the public's need for safety from the possible future misconduct of the accused child and its need for redress for the wrong allegedly committed.

Once the justice decides that waiver is appropriate, § 14–1–7.1(b) authorizes him

9. In analyzing this second prong, the justice is further guided by factors annunciated in Rule 12 of the Family Court Rules of Juvenile Proceedings. That rule says, in relevant part,

"(c) *Standards for Waiver of Jurisdiction.* In determining whether to waive jurisdiction the court will be guided by the following standards, either one of which may serve as a sufficient basis for waiver:

"(1) Treatability of the child, i.e., whether or not there are reasonable prospects for rehabilitating the child by use of facilities currently available to the family court in a private facility, in a community facility, or in a juvenile institution;

"(2) Protection of the public, i.e., whether or not there are reasonable prospects for adequately protecting the public by use of facilities currently available to the family court.

"(d) *Factors in Determining Waiver.* For purposes of applying the relevant standards set forth in subdivision (c) of this Rule the following factors are relevant:

"(1) The child's prior delinquent and wayward acts and the nature of the child's conduct therein;

"(2) The nature of the child's alleged conduct in connection with the current charge, to the extent that (a) such allegation of the child's conduct would form a pattern of anti-social conduct that seems beyond the rehabilitative reach of facilities available to the family court, or (b) such alleged conduct indicates that the child is dangerous to the public (dangerous to be measured in light of circumstances surrounding the alleged conduct, such as aggressiveness and the nature of the reasonably foreseeable consequences);

"(3) The child's age, to the extent that a length of time beyond the limits of family court jurisdiction is required for reasonable prospects of the child's rehabilitation;

"(4) The child's attitude, to the extent that it bears on the child's willingness to cooperate with family court rehabilitative efforts;

"(5) The child's family environment (including the degree of care, supervision and support it provides the child), to the extent that family support is essential to the family court's rehabilitative program;

"(6) The child's prior contacts with rehabilitative facilities available to the family court, in the community and in juvenile institutions, in terms of the extent and apparent rehabilitative impact of such contacts."

to "waive jurisdiction over the child and refer the child to the appropriate adult court to be tried for the offense as an adult." And, according to § 14–1–7.1(c), the waiver constitutes both "a waiver of jurisdiction over that child for the offense upon which the motion is based as well as for all pending and subsequent offenses of whatever nature * * *."

Armed with a better understanding of the waiver process and the reasons supporting its existence, we now turn to the question presented in this case: after the Family Court has waived jurisdiction over a juvenile in accordance with § 14–1–7.1, is the jurisdiction of the adult court to which the child is referred limited to the charges for which probable cause was found in the Family Court?

## II.

### Persuasive Authority

We begin by noting that we are not the first Court to address this thorny issue, and, although some authority exists to the contrary,[10] the great majority of courts faced with this question have held that prosecutors may charge a child who is waived from juvenile court jurisdiction with any crime that arises from the conduct for which the waiver was sought.[11]

10. The defendant cites *Gibson v. State,* 47 Wis.2d 810, 177 N.W.2d 912 (Wis.1970), to support his argument that a juvenile cannot be charged with crimes for which he was not waived by the juvenile court. In *Gibson,* the Supreme Court of Wisconsin held that "[a] juvenile court can only waive its jurisdiction with respect to charges of delinquency that are actually before it." *Id.* at 915. Though this case may indeed support defendant's argument, it appears to be an outlier with respect to the weight of authority in this country on juvenile waiver. *See e.g. Knotts v. State,* 686 So.2d 431 (Ala.Crim.App.1995); *People v. Hamilton,* 78 Ill.App.3d 1031, 34 Ill.Dec. 358, 398 N.E.2d 33 (1979); *Pharms v. State,* 477 N.E.2d 334 (Ind.Ct.App.1985); *State v. Randolph,* 19 Kan.App.2d 730, 876 P.2d 177 (1994); *Osborne v. Commonwealth,* 43 S.W.3d 234 (Ky.2001); *Johnson v. State,* 512 So.2d 1246 (Miss.1987); *State v. Davis,* 988 S.W.2d 68 (Mo.Ct.App.1999); *State v. Garcia,* 93 N.M. 51, 596 P.2d 264 (N.M.1979); *State v. Walton,* 600 N.W.2d 524 (S.D.1999). As such, we decline to follow its reasoning.

11. The defendant maintains that, in addition to *Gibson,* two other decisions in particular support the position that a trial of a child in an adult court should be limited to the particular offenses brought before the juvenile court. Upon a review of these cases, however, we conclude that they provide no support for defendant's assertions.

The defendant first points us to the holding in *Robidoux v. Coker,* 383 So.2d 719 (Fla.Dist. Ct.App.1980), and maintains that it supports his contention that, in the State of Florida, a child cannot be charged with crimes different from or in addition to those for which he was waived by the juvenile court. *Robidoux* is readily distinguished from the case at bar. In *Robidoux,* the court was interpreting Florida's mandatory waiver provision, which required that "a child of any age charged with a violation of Florida law punishable by death or life imprisonment shall be tried as an adult if an indictment on such charge is returned by the grand jury." *Id.* at 720. The facts of the case involved a juvenile offender who was indicted on a life felony charge of armed robbery but was also charged with the non-life felony charges of attempted murder and aggravated assault. The court held that "[o]nly the offense punishable by death or life imprisonment [was] properly before the adult court[,]" *id.* at 721, and thus dismissed the other two charges. This holding, however, has no bearing on our analysis today because we are not interpreting a mandatory waiver statute (Rhode Island's mandatory waiver provision is governed by § 14–1–5). The waiver at issue in this case is discretionary in nature and therefore is completely outside the Florida court's reasoning and analysis in *Robidoux.* Further, we would be remiss if we did not also point out that, shortly after *Robidoux* was decided, the Supreme Court of Florida noted that the particular statute in question in *Robidoux* was amended shortly after that decision "to allow the inclusion of connected offenses in the indictment charging a juvenile with a capital or life felony." *State v. King,* 426 So.2d 12, 14 n. 2 (Fla.1982).

Second, the defendant maintains that in *Benge v. Commonwealth,* 346 S.W.2d 311 (Ky.

*See e.g. Knotts v. State,* 686 So.2d 431 (Ala.Crim.App.1995); *People v. Hamilton,* 78 Ill.App.3d 1031, 34 Ill.Dec. 358, 398 N.E.2d 33 (1979); *Pharms v. State,* 477 N.E.2d 334 (Ind.Ct.App.1985); *State v. Randolph,* 19 Kan.App.2d 730, 876 P.2d 177 (1994); *Osborne v. Commonwealth,* 43 S.W.3d 234 (Ky.2001); *Johnson v. State,* 512 So.2d 1246 (Miss.1987); *State v. Davis,* 988 S.W.2d 68 (Mo.Ct.App.1999); *State v. Garcia,* 93 N.M. 51, 596 P.2d 264 (N.M. 1979); *State v. Walton,* 600 N.W.2d 524 (S.D.1999); *but see Gibson v. State,* 47 Wis.2d 810, 177 N.W.2d 912 (Wis.1970). Although these cases involve our sister courts' interpretation of their own states' individual waiver statutes, "their value is in showing their approach to the problem and not the result." *Randolph,* 876 P.2d at 180. Also, it is significant that juvenile waiver statutes in this country share a common thread of consistency emanating from the holding in *Kent v. United States,* 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966), which set forth the factors a juvenile court should consider before a child is waived from its jurisdiction. As a result, even though our waiver statute might vary from those of other states in detail, our sister courts' interpretations of their own juvenile waiver statutes provide us with both persuasive authority and valuable insight into the philosophy and legislative intent of juvenile waiver in general.

---

1961), the Court of Appeals of Kentucky endorsed the limitation of charges against a child in an adult court to those for which waiver was sought in the juvenile court. To begin, *Benge* is not directly on point with the issue in this case, and thus does not stand for what defendant contends it does. Of much greater importance, however, is the fact that in *Osborne v. Commonwealth,* a case cited by neither side, the Supreme Court of Kentucky spoke directly to the issue at hand and held that prosecutors are not so limited. After a discussion of the statutory structure of the Kentucky juvenile waiver system, the court in *Osborne* stated:

In *Randolph,* the Kansas Court of Appeals interpreted its state's juvenile waiver statute with respect to the issue of whether a child may be charged in an adult court with charges that were not brought at the waiver hearing. In *Randolph,* the court held that

> "[t]he juvenile court is to make the judicial determination of whether a juvenile should remain within the province of the juvenile court and not determine what charges the State can file. Once the juvenile court decides to waive jurisdiction * * * and the respondent appears in the criminal court as a defendant, the criminal court acquires personal and subject matter jurisdiction over the case. The criminal court can try any additional charges that might arise from the same set of facts that spawned the juvenile case * * *. The State does not have to return to juvenile court and again seek its waiver of jurisdiction. It is sufficient that the procedure starts in juvenile court." *Randolph,* 876 P.2d at 180–81.

In *Walton,* the Supreme Court of South Dakota echoed the sentiments of the *Randolph* court. The *Walton* court cited the reasoning in *Randolph* as persuasive and held that the factors to be considered by the juvenile court in South Dakota waiver cases,

> "If the grand jury finds probable cause to indict the child as a youthful offender, KRS 640.010(3) does not preclude it from indicting the child for other offenses arising out of the same course of conduct that gave rise to the offense that caused the child to be transferred to the [adult] court. In fact, the provisions of [Kentucky statutes] anticipate that other offenses arising out of the same course of conduct can be charged and adjudicated in [adult] court after transfer." *Osborne,* 43 S.W.3d at 238–39.

"do 'not require a strict policy of bringing every charge before the juvenile court for its approval. The juvenile court is to make the judicial determination of whether a juvenile should remain within the province of the juvenile court and not determine what charges the State can file.'" *Walton*, 600 N.W.2d at 533 (S.D.1999) (quoting *Randolph*, 876 P.2d at 180–81 (Kan.App.1994)).

We conclude that the logic of the *Randolph* and *Walton* decisions is sound indeed.[12] We agree with our sister courts that it would be illogical to conclude that the Legislature intended to give the Family Court the power to dictate what charges an Attorney General may bring in the adult court.

### III.

### Discussion of § 14–1–7.1

■ We decline defendant's invitation to apply a literal interpretation of the term "offense," as used throughout § 14–1–7.1, to mean a particular crime defined by the laws of this state. Indeed, to do so would completely ignore the statutory limitations of the Family Court, which does not have subject matter jurisdiction over violations of the criminal code. As previously discussed, a child cannot be charged with any crime while still under the jurisdiction of that court. Rather, children are accused of certain acts through the filing of delinquency petitions. Therefore, we conclude that the words "for the offense" employed in § 14–1–7.1(b) do not refer to a particu-

lar crime, but rather refer to the actions of the accused child.

Reading our waiver statute with this definitional construction in mind, it is clear that the Family Court's only function under §§ 14–1–7 and 14–1–7.1 is to determine whether the child should be tried as an adult for any and all of that child's actions arising from the nucleus of operative facts that served as the basis for the waiver motion. Significantly, that function does not include a determination of the criminal charges on which the child must be tried in the adult court. In our opinion, once the Family Court orders a waiver of its personal jurisdiction over a child, jurisdiction is vested completely in the adult court. Although we agree that the waiver of jurisdiction is limited by the language of § 14–1–7.1(b) to the *actions* which spawned the waiver,[13] it certainly is not limited by the Family Court's legal conclusion that those actions constituted particular crime(s).

Further, we believe that to hold otherwise would serve to infringe upon the constitutional powers of the Attorney General. *See In re House of Representatives (Special Prosecutor)*, 575 A.2d 176, 180 (R.I. 1990) ("It is our opinion that this transfer of power to the special prosecutor severely infringes upon the fundamental powers of the Attorney General."). For example, under defendant's interpretation of § 14–1–7.1, if a prosecutor obtained evidence establishing probable cause for the requisite aggravating factors of first-degree robbery after a waiver hearing on the charge of second-degree robbery, he would be

---

**12.** The Randolph decision is particularly instructive because the Kansas juvenile waiver statute closely mimics the language of § 14–1–7.1(b). Kan. Stat. Ann. § 38–1636(f)(1) (2006) says "[t]he court may authorize prosecution as an adult upon completion of the hearing if the court finds that there is substantial evidence that the respondent should

be prosecuted as an adult *for the offense* with which the respondent is charged." (Emphasis added.)

**13.** Also, § 14–1–7.1(c) requires that "[i]n the event that the child is acquitted *of the offense* for which the waiver has been sought, the waiver shall be vacated." (Emphasis added.)

barred completely from charging the child in the Superior Court for the greater offense. The defendant maintains that in that situation the prosecutor merely would be required to return to Family Court for waiver on the greater charge. But, § 14–1–7.1(c) provides that once a waiver is granted, the Family Court retains no jurisdiction over the child for any offenses, including those pending and subsequent to the waiver.[14] In essence, defendant suggests that there should be a return to the Family Court after that court no longer has any jurisdiction over the child. That reading of the statute would lead to an absurd result—something which we will not do. *See Kaya v. Partington*, 681 A.2d 256, 261 (R.I.1996) (stating that the Court "will not construe a statute to reach an absurd result").

In conclusion, we hold that once a Family Court justice determines that a child should be waived from the jurisdiction of the Family Court, there is no limitation to the charges that may be lodged against the child in the adult court, as long as those charges spring from the nucleus of operative facts upon which the Family Court waiver of jurisdiction was based.

### Conclusion

For the reasons set forth in this opinion, the judgment of the Superior Court dismissing the indictment against the defendant is reversed, and the papers in this case are remanded to the Superior Court for proceedings not inconsistent with this opinion.

---

**14.** Section 14–1–7.1(c) clearly mandates that "[a] waiver of jurisdiction over a child pursuant to this section shall constitute a waiver of jurisdiction over that child for the offense upon which the motion is based as well as for all pending and subsequent offenses of whatever nature * * *."